MICHAEL M. EDWARDS
Nevada Bar No. 6281
Michael.Edwards@wilsonelser.com
TYSON E. HAFEN
Nevada Bar No. 13139
Tyson.Hafen@wilsonelser.com
NICOLAS M. BUI
Nevada Bar No. 12709
Nicolas.Bui@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER** LLP
300 South Fourth Street, 11ᵗʰ Floor
Las Vegas, NV 89101
Telephone 702.727.1400
Facsimile 702.727.1401
*Attorneys for Defendants Camping World, Inc.,*
*Wheeler RV Las Vegas, LLC, and Winnebago Industries, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KIM BOLIBA, | CASE NO.:  2:14-cv-01840-JAD-NJK |
| Plaintiff, | |
| v. | |
| CAMPING WORLD, INC.; CAMPING WORLD RV SALES, LLC; WHEELER LAS VEGAS RV d/b/a CAMPING WORLD RV SALES, WINNEBAGO INDUSTRIES, INC., DOES 1-10; and, ROE Corporations 1-10, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** |
| Defendants. | |

Defendants Camping World, Inc. ("Camping World"), Wheeler RV Las Vegas, LLC

("Wheeler") and Winnebago Industries, Inc. ("Winnebago"), ("Defendants") by and through their

counsel of record, Michael M. Edwards, Esq. and Tyson E. Hafen, Esq., of WILSON ELSER

MOSKOWITZ EDELMAN & DICKER, LLP respectfully move this Court for an order entering summary

judgment in favor of the Defendants.  This motion is made pursuant to Fed. R. Civ. P. 56 in that the

undisputed facts establish that Defendants are entitled to judgment as a matter of law as to all of Kim

Boliba's ("Plaintiff") eight (8) causes of action asserted against Defendants in Plaintiff's Second

Amended Complaint ("Second Amended Complaint").

. . .

. . .

. . .

This motion is based on the memorandum in support, any papers and pleadings on file, any oral argument adduced by counsel, and any other matters appropriate for this Court's determination.

DATED this 8th day of September, 2015.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

By:   */s/ Tyson E. Hafen, Esq.*
       Michael M. Edwards, Nevada Bar No. 6281
       Tyson E. Hafen, Nevada Bar No. 13139
       Nicolas M. Bui, Nevada Bar No. 12709
       300 South Fourth Street, 11th Floor
       Las Vegas, NV  89101
       *Attorneys for Defendants Camping World, Inc.,*
       *Wheeler RV Las Vegas, LLC, and Winnebago*
       *Industries, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This action involves warranty and breach of contract related claims arising from Plaintiff's December 10, 2013 purchase of a new 2014 Winnebago Itasca Ellipse Model 42GD motor home ("RV") from Camping World of Las Vegas.  In short, Plaintiff claims in the Second Amended Complaint that the RV is not a 2014 model year and that it is defective.  Plaintiff, a resident of California, is a litigious person who filed a strikingly similar lawsuit[1] in 2006 against Land Rover in the San Francisco Superior Court also alleging warranty violations and alleged defects pertaining to Plaintiff's purchase of a Land Rover SUV.  As such, it appears that Plaintiff has a history of bringing baseless claims against automobile dealers and manufacturers in order to persuade them to buy back vehicles after Plaintiff experiences buyer's remorse.  However, as will be shown, Plaintiff's baseless and unsupported allegations in the instant matter mandate that Defendants' motion for summary judgment be granted.

First, Plaintiff's entire action against Defendants depends upon the false and unsupported allegation that the RV is a 2013 rather than a 2014 model year based on the fact that a California

---

[1] *See e.g.*, **Ex. A,** Kim L. Boliba v. Land Rover North America, Inc. et al, case no. CGC-06-454555, filed on July 27, 2006 in the San Francisco Superior Court.

DMV employee allegedly registered the RV as a 2013 model year.  Remarkably, Plaintiff contends that "[w]hen he went to register the vehicle in California the California DMV <u>refused</u> to register the vehicle as a 2014 model and instead registered the vehicle as a 2013 model."[2]  However, Plaintiff's partner, Richard Wheatley, admitted during his deposition that when he and the Plaintiff took the RV to the California DMV to have it registered, the DMV employee actually gave <u>them</u> the option of having the RV registered as either a 2013 or 2014 model year, and asked Plaintiff and Mr. Wheatley "[d]o you want me to register it as a '13 or '14?"[3]  Therefore, Plaintiff's allegation that the California DMV "refused" to register the RV as a 2014 model year is untrue as it was Plaintiff's own decision whether to have the RV registered as a 2013 or 2014 model year.  More importantly, Winnebago clearly designated the RV as 2014 model year, which it is, and Kitty Kramer, an administrator of the California DMV confirmed during her deposition that the RV was registered incorrectly, and should have been registered as a 2014 model year pursuant to California DMV vehicle registration policies and procedures.[4]  Although Defendants have provided Plaintiff (on multiple occasions)[5] with the contact information of employees at the California DMV who have volunteered to assist in correcting the registration error, Plaintiff has admitted[6] that he has made no such effort to resolve the model year registration discrepancy with the California DMV in order to have the RV correctly registered as the 2014 model year that it is, presumably because he believes doing so would hurt his case.

Second, although Plaintiff alleges that his RV is "defective," even Plaintiff's expert William Guentzler, Ph.D. conceded that nearly all of Plaintiff's alleged "defects" are actually minor cosmetic imperfections for which Plaintiff has produced no evidence he did not cause himself through normal wear and tear during the nearly twenty-one (21) months he owned the RV (including approximately

---

[2] *See* **Ex. B**, Plaintiff's Objection to Order Regarding Defendants' Motion To Strike, filed July 8, 2015 (Doc. No. 43), at 2:16-11 (emphasis added).

[3] *See* **Ex. C**, Deposition Transcript of Richard Wheatley, at 56:1-2.

[4] *See* **Ex. D**, Deposition Transcript of Kitty Kramer, CA DMV PMK, at 40:17-22; 45:18-46:1; *see also* **Ex. E**, Email Communication from California DMV and relevant section from the Vehicle Industry Registration Manual explaining that the model year of "split-year" motorhomes (i.e., when the chassis and body are completed in different years) <u>is designated by the final stage motorhome manufacturer</u>; here, the motorhome was designated a 2014 model year by the final stage motorhome manufacturer, Winnebago .

[5] *See* **Ex. D**, 40:23-42:9; *see also* **Ex. F**, Deposition Transcript of Plaintiff Kim Boliba, at 38:18-40:25; *see also* **Ex. G**, Defendants' Motion To Dismiss Plaintiff's Amended Complaint (Doc. No. 2), at pg. 5, footnote 9.

[6] *See* **Ex. H**, Plaintiff's Answers to Defendant Camping World, Inc.'s Requests For Admission, at 4:13-23.

844704v.4

2,000 thousand of miles of driving and many weeks of living in the RV[7]).  Specifically, Plaintiff's expert Dr. Guentzler took 123 photographs of the RV and testified that the vast majority of the alleged defects in the photographs were "cosmetic" rather than functional.[8]  Additionally, Plaintiff's one-year warranty on the RV expired long ago, and Plaintiff has never taken the RV to any dealership to have any alleged warranty covered defects actually repaired. Although Plaintiff alleges that after filing this lawsuit he "had Findlay [RV] inspect the vehicle and wished to have Findlay perform the repairs [and that] Defendants, through counsel, contacted Plaintiff's counsel saying that Findlay would not perform any repairs,"[9] these allegations are patently <u>false</u>.  Defendants were agreeable to having Findlay RV <u>repair</u> any warranty-covered defects, but Plaintiff only wanted Findlay RV to perform an <u>inspection</u> of the RV (in effect having Defendants' affiliated dealer act as Plaintiff's expert on Defendants' dime).  In fact, to this date, Plaintiff has never—ever—taken the RV to any dealership to have any warranty-covered defects actually repaired.  Why?  Because Plaintiff simply does not want the RV anymore and is trying to find a way out; notably, Plaintiff admitted during his deposition that even if any alleged warranty-covered defects were to be repaired he would still not be satisfied because he doesn't believe the RV is a 2014 model year (which it clearly is) despite having no evidence to the contrary.[10]

Third, Plaintiff committed numerous discovery violations and practically failed to engage in any discovery up through the extended June 3, 2015 close of discovery deadline, despite even being granted a 30 day close of discovery extension[11] by this Court; e.g., Plaintiff served his initial list of witnesses and documents ten (10) weeks late, served his initial expert disclosures two (2) months late, responded to Defendants' written discovery requests over one (1) month late (and not until the night before Plaintiff's deposition), did not propound any written discovery on Defendants, did not notice or take any depositions, and never supplemented his initial list of witnesses and documents (likely because he has apparently failed to request/subpoena any records from anyone).  However, in

---

[7] See **Ex. F**, 42:13-16.
[8] *See* **Ex. I**, Deposition of William Guentzler, 206:6-215:12.)
[9] *See* **Ex. B**, 3:5-9.
[10] *See* **Ex. F**, 94:15-22.
[11] *See* **Ex. J** Initial Discovery Plan & Scheduling Order, filed January 2, 2015 (Doc. No. 16); *see also* **Ex. K**, Amended Scheduling Order, filed April 14, 2015 (Doc. No. 26).

844704v.4

the meantime, Defendants were anxiously engaged in discovery, met all discovery deadlines, timely propounded a substantial amount of written discovery on the Plaintiff, and timely noticed and took four (4) depositions (and even agreed to postpone Plaintiff's and his partner's depositions to June 2, 2015—the day prior to the close of discovery—because of Plaintiff's and his partner's prolonged European vacation).  As such, it appears that Plaintiff may have simply given up after finally realizing that his claims are baseless and unwarranted; nonetheless, Defendants file this instant motion for summary judgment in order for this Court to formally end this lawsuit.

## II.   PROCEDURAL HISTORY

1.   Plaintiff originally filed this action alleging breach of contract/warranty related claims against Defendants in the Eighth Judicial District Court, Clark County, on June 9, 2014; the action was thereafter removed to the United States District Court, District of Nevada.

2.   On November 3, 2014, Defendants filed a Motion to Dismiss Plaintiff's Amended complaint.  During the January 12, 2015 hearing this Court granted Defendants' Motion to Dismiss Plaintiff's Amended Complaint as to the seventh claim for relief (fraud) but denied the motion as to the other causes of action.  The Court explained that Plaintiff's other claims at least met the "plausibility standard, at this point, . . . . [b]ut I think that the arguments about whether or not this thing is a 2013 are going to be better presented in summary judgment, when we actually have evidence to consider."[12]  The Court determined that it was treating Defendants' motion as one for a more definite statement under Fed. R. Civ. P. 12(e) and therefore granted Plaintiff leave to amend.[13] Specifically, the Court granted the leave to amend because it found Plaintiff's claims "unintelligible"[14] due to "sloppiness,"[15] and because there were "ambiguities . . . that essentially prevent the defendant from fairly responding to [the first amended] complaint."[16]  The Court concluded during the January 12, 2015 hearing that it "anticipate[d] a second amended complaint that is going to clear up all of these ambiguities."[17]

---

[12] See **Ex. L**, Minutes of January 12, 2015 Hearing, 17:4-16.
[13] See **Ex. L**, 18:2-8.
[14] Id. **Ex. L,** 18:2.
[15] Id. **Ex. L,** 18:14.
[16] Id. **Ex. L,** 18:5-6.
[17] Id. **Ex. L,** 18:21-22.

844704v.4

3.    On January 26, 2015 Plaintiff filed a Second Amended Complaint with this Court, which again included causes of allegation "Against all Defendants,"[18] which violated the Court's request that Plaintiff clear up the ambiguities in the complaint.  As such, on February 9, 2015, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint.[19]  Following the May 11, 2015 hearing on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, the Court explained that "despite opportunity to amend with court guidance on the deficiencies of the claims, plaintiff still has not stated plausible claims against all defendant."[20] As such, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint was granted in part and denied in part, as follows:

- All claims against Defendant Camping World RV Sales, LLC, were dismissed;
- Plaintiff's first cause of action (breach of contract) was dismissed against Winnebago Industries, Inc.;
- Plaintiff's second cause of action (deceptive trade practices – NRS 598.0915) was dismissed against Camping World, Inc.
- Plaintiff's third cause of action (breach of express warranties) was dismissed against Camping World, Inc.
- Plaintiff's fourth cause of action (breach of implied warranties) was dismissed against Camping World, Inc.
- Plaintiff's fifth cause of action (breach of implied covenant of good faith and fair dealing) was dismissed against Winnebago Industries, Inc., and against all Defendants to the extent it is not based on the implied covenant of good faith and fair dealing in a contract with Plaintiff;
- Plaintiff's sixth cause of action (Violation of Nevada's Lemon Law – NRS 597.600) was dismissed against Camping World, Inc.; and

---

[18] *See* **Ex. M**, Plaintiff's Second Amended Complaint (Doc. No. 18).
[19] See **Ex. N**, Defendants Motion to Dismiss Plaintiff's Second Amended Complaint (Doc No. 20).
[20] See **Ex. O**, Order Granting Motion to Dismiss in Part, # 20 (Doc. No. 30).

- Plaintiff's eighth cause of action (fraud) was dismissed against Camping World, Inc. and Winnebago Industries, Inc.[21]

4.     On May 21, 2015, Defendants filed their answer to Plaintiff's second amended complaint, generally denying all of Plaintiff's causes of action.[22]

## III.     UNDISPUTED FACTS

1.     On or about December 10, 2013, Plaintiff entered into a written purchase agreement with Camping World to purchase a new 2014 Winnebago Itasca Ellipse Model 42GD, identified by VIN 4UZFCUCY0DCFJ0829 ("RV"). (*See* **Exhibit "Q,"** Amended Complaint at ¶ 7[23] and "AmendedComp0017-19.")

2.     The written purchase agreement, signed by Plaintiff, contains the following "DISCLAIMER OF WARRANTIES," which was initialed by Plaintiff:

> The seller, Camping World RV Sales, hereby expressly disclaims all warranties, either express or implied.  Including any implied warranty of merchantability or fitness for a particular purpose, and Camping World RV Sales neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle.

> (*Id.* at ¶ 7 and "AmendedComp0019.")

3.     Plaintiff paid "at or around $342,000.00" for the RV, "of which Plaintiff financed approximately $267,500."  (*Id.* at ¶ 9 and "AmendedComp0017-19.")

4.     The manufacturer of the chassis of the RV, Freightliner Custom Chassis, did not identify the chassis by specific year on the Chassis Certificate of Origin because the RV was an incomplete vehicle under 49 CFR § 565.13(a).  (*Id.* at Chassis Certificate of Origin, "AmendedComp0025.")

5.     The manufacturer of the body of the motor home, Winnebago, under its authority as the final stage motor home manufacturer, identified the completed RV as a **2014** model year IKR42GD Itasca, VIN 4UZFCUCY0DCFJ0829.  (*Id.* at Winnebago Certificate of Origin, "AmendedComp0023.")

---

[21] *See* **Ex. M**.
[22] *See* **Ex. P**, Defendants Answer to Plaintiff's Second Amended Complaint, filed May 21, 2015, (Doc. No. 33).
[23] *See* **Ex. Q**, It appears that the First Amended Complaint is not complete, as there is no ¶ 8, and the top of pg. 3 appears to start mid-sentence.

844704v.4

6.      Plaintiff was provided with a letter from Winnebago, dated March 3, 2014 and signed by Tom Olsen of the Winnebago Service Dept., which affirmed that the RV, with Body Serial No. 70R85R147439 and Chassis Serial No. 4UZFCUCY0DCFJ0829, is a **2014** model year IKR42GD Itasca Ellipse model, that was built in Forest City, IA and should be titled as such.  (*Id.* at ¶ 13 and "AmendedComp0021.")

7.      The transfer of title documentation indicates that Plaintiff purchased the RV directly from the dealer who purchased the RV directly from Winnebago; the transfer of title documentation further indicates that the odometer reading—which Plaintiff filled in himself—was 1,839 miles at the time of purchase, which approximately equates to the driving distance from the Winnebago manufacturing facility to Camping World Las Vegas.  (*Id.* at Transfer of Title Documentation, "AmendedComp0024" and "AmendedComp0026.")

## IV.    <u>STANDARD</u>

Fed. R. Civ. P. 56(a) provides, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Summary judgment is appropriate when the party asserting that a fact cannot be genuinely disputed can support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . . or that an adverse party cannot produce evidence to support the fact."  Fed. R. Civ. P. 56(c).  Summary judgment is meant to "isolate and dispose of factually unsupported claims." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  *Allstate Ins. Co. v. Sanders*, 495 F. Supp. 2d 1104, 1106

(D. Nev. 2007).  The moving party can satisfy that burden by demonstrating that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.

The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  *Id.*; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).  A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts.  *Allstate Ins. Co. v. Sanders*, 495 F. Supp. 2d 1104, 1106-1107 (D. Nev. 2007), *citing Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson,* 477 U.S. at 247-48.

Fed. R. Civ. P. 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.  This places the burden on Plaintiff to present specific supported **facts**, not just allegations that demonstrate a genuine issue of material fact.  Plaintiff's inability to do so entitles Defendants to summary judgment in their favor.  This motion is made pursuant to Fed. R. Civ. P. 56 in that the undisputed facts establish that Defendants are entitled to judgment as a matter of law as to all of Plaintiff's eight (8) causes of action asserted against Defendants in Plaintiff's Second Amended Complaint.

. . .

. . .

. . .

. . .

. . .

. . .

V. **ARGUMENT**

Pursuant to Fed. R. Civ. P. 56(a) this Honorable Court should grant summary judgment in Defendants' favor because the RV is a 2014 model year and any alleged defects are the result of Plaintiff's failure to provide reasonable and necessary maintenance.

    1.    <u>Summary Judgment Should Be Granted Against Plaintiff's Claim for Breach of Contract Because the RV is a 2014 Model Year as Designated by the Final Stage Manufacturer</u>

Plaintiff's first cause of action, breach of contract, is based on the allegation that Plaintiff entered into an agreement with "Defendants"[24] for a 2014 Winnebago Itasca Ellipse, but was given a 2013 Winnebago Itasca Ellipse.  As evidence of such, Plaintiff merely alleges that the California DMV registered the DMV as a 2013 rather than 2014 model year and because the RV allegedly has a paint scheme that looks like an 2013 RV in a Winnebago brochure.

Motor homes are multistage vehicles, and unlike cars, are generally built in two separate stages by two different manufacturers.   According to the Code of Federal Regulations ("CFR"), a vehicle manufactured in more than one stage must have a VIN assigned to it by the incomplete vehicle manufacturer (i.e., the manufacturer of the motor home chassis).[25]  According to the Federal Trade Commission ("FTC"), the final stage motor home manufacturer (i.e., the manufacturer of the body of the motor home) has authority to designate the model year of the completed motor home.[26]  Moreover, according to the U.S. Dept. of Transportation, the "model year" means "the year used to designate a discrete vehicle model irrespective of the calendar year in which the vehicle was actually produced, so long as the actual period is less than 2 years."[27]  Plaintiff testified at his deposition that he is aware that motor homes can built in separate stages in different years (e.g., Plaintiff testified "I do know that the frame is – can be one year and then the coach can be another year.")[28]

---

[24] Notably, throughout the Amended Complaint, Plaintiff repeatedly uses the terms "Defendant" (singular) and "Defendants" (plural), but never specifies which defendant and/or defendants he is referring to; therefore, Defendants do not know which causes of action apply to each entity.

[25] *See* **Ex. R**, 49 CFR § 565.13(a).

[26] *See* **Ex S**, <u>Federal Trade Commission Informal Staff Opinion</u>, dated March 5, 2001.

[27] *See* **Ex. T**, DOT's Federal Motor Vehicle Safety Standards, Title 49, Part 565 (formerly part 571).

[28] *See* **Ex. F**, 25:9-26:10.

844704v.4

1    Here, the manufacturer of the chassis of the completed RV, Freightliner Custom Chassis, did

2    not identify the chassis by specific year on the Certificate of Origin because the RV was an

3    incomplete vehicle under 49 CFR § 565.13(a)[29].  The manufacturer of the body of the motor home,

4    Winnebago, under its authority as the final stage motor home manufacturer, identified the RV as a

5    2014 model year.[30]  Therefore, the RV is a 2014 model year.

6    Additionally, § 2.150 of the California DMV Internal Registration Manual clearly states that

7    the final stage motor home manufacturer assigns the model year to the motor home, even in

8    instances when the chassis has a VIN indicating a different year than the serial number of the body

9    of the motor home.  Furthermore, the American Association of Motor Vehicle Administrators

10   ("AAMVA")—of which the Director of the California Dept. of Motor Vehicles is an officer—has

11   published its official policy position that "the model year of a new complete vehicle shall be the only

12   year recorded in the motor vehicle agency files and on the registration and title."[31]

13   Further, Kitty Kramer, the California DMV person most knowledgeable regarding

14   registration of motor homes,[32] testified that based upon her review of the documents for the subject

15   RV (including the RV's certificate of origin), the RV should have been registered as a 2014 model

16   year because that is the model year assigned by the final-stage motor home manufacturer.  In

17   addition, Ms. Kramer stated that the Plaintiff can easily fix the registration problem by contacting

18   the DMV.  Specifically, Ms. Kramer testified as follows:

19         Q.    And going back to what we talked about before, the model year is assigned by the
20               second-stage home manufacturer?
             A.    Right.
21         Q.    The certificate of origin clearly reads that the model year assigned was 2014?
             A.    Right.
22         Q.    So you're not sure why they would have registered it as a 2013-
23         A.    No.
             Q.    -from what you've seen?
24         A.    They should have followed the instructions in the procedures manual.
             Q.    Which are what?
25         A.    You register the VIN using the motor – second-stage motor home make and model.
             …
26

---

27   [29] See **Ex. Q**, "AmendedComp0025," Chassis Certificate of Origin.
     [30] See **Ex. Q**, "AmendedComp0023," Winnebago Certificate of Origin.
     [31] See **Ex. U**, Policy Positions of the AAMVA, "Multi-Stage Vehicle Titling" at ¶ 6.
28   [32] See **Ex. D**, 8:14-9:2.

844704v.4

Q.     So based on the documents that you have, should the subject RV, the one we've been discussing, been registered as a 2014 model year because that is the model year clearly assigned to it by the final-stage motor home manufacturer?

A.     Yes.

Q.     Okay.  What could the owner do to have this mistake corrected?

A.     It's actually very easy because this is a paperless title transaction.  I could have it fixed today and the lien holder would be sent an electronic record with the correct year model, and a registration card would be issued to the registered owner with the correct year model.

Q.     Would it cost the owner money to have it corrected?

A.     No.

…

Q.     So again, based on your review of the records, this motor home should have been registered as a 2014 year model?

A.     Yes.

Q.     Even though it had a 2013 VIN chassis?

A.     Correct.

(*See* **Ex. D**, Deposition Transcript of Kitty Kramer at 39:16-40:6, 40:17-41:8, 45:21-46:1.)

After Ms. Kramer's deposition, Defendants spoke to Plaintiff's counsel on the telephone to advise him of the easy remedy of the DMV correcting the model year on the RV to 2014 free of charge, but Plaintiff refused.  Thus, Plaintiff has acted unreasonably in not having the DMV correct the mistake to have the RV registered as a 2014 model year, and he instead, continued to pursue this lawsuit.

Further, Plaintiff's partner, Richard Wheatley, admitted during his deposition that when he and the Plaintiff took the RV to the California DMV to have it registered, the DMV employee actually gave them the option of having the RV registered as either a 2013 or 2014 model year, and asked Plaintiff and Mr. Wheatley "[d]o you want me to register it as a '13 or '14?," and Plaintiff and Mr. Wheatley chose to register it as 2013 model year. [33]  Thus, it was Plaintiff's own choice to have it registered as a 2013 model year at the DMV office.

This Court has already dismissed Plaintiff's cause of action for breach of contract against Defendant Winnebago Industries, Inc.  This Court should grant summary judgment against Plaintiff's cause of action for breach of contract as to all remaining Defendants because there is no genuine dispute of material fact that the RV is a 2014 model year Winnebago Itasca Ellipse.

---

[33] *See* **Ex. C**, 55:11-56:11.

844704v.4

2.    <u>Summary Judgment Should Be Granted Against Plaintiff's Claim of Deceptive Trade Practices Because the RV is a 2014 Model Year as Designated by the Final Stage Manufacturer</u>

Plaintiff's second cause of action arises under NRS § 598.0915 & 598.0923.  NRS § 598.0915 reads, in relevant part:

> A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:
> …
> 6.  Represents that goods for sale or lease are original or new if he or she knows or should know that they are deteriorated, altered, reconditioned, reclaimed, used or secondhand.
> …
> 15.  Knowingly makes any other false representation in a transaction.

Additionally, NRS § 598.0923 reads, in relevant part:

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation, he or she knowingly:
> …
> 2.  Fails to disclose a material fact in connection with the sale or lease of goods or services.

Plaintiff alleges that Defendants knowingly failed to disclose that the RV was a 2013, rather than a 2014, model year, and therefore knowingly failed to disclose a material fact.  As discussed above, the RV is a 2014 model year.  Furthermore, the FTC has determined that it is <u>not</u> an unfair or deceptive trade practice for the completed motor home and its chassis to have different model years.[34]  Specifically, the FTC opined that, "[i]t would not likely be considered an unfair or deceptive act or practice for a motor vehicle manufacturer to designate the model year of a multi-stage motor home or recreational vehicle . . . as that of the completed motor home or recreational vehicle, even when that model year is different from that of the vehicle's chassis."[35]

This Court has already dismissed Plaintiff's cause of action arising under deceptive trade practices as to Defendant Camping World, Inc.  This Court should grant summary judgment against Plaintiff's cause of action arising under deceptive trade practices as to all remaining Defendants because there is no genuine dispute of material fact that the RV is a 2014 model year Winnebago Itasca Ellipse, and the FTC has determined it is not an unfair or deceptive trade practice for completed motor homes (which are built in multiple stages) to have a different model year assigned

---

[34] *See* **Ex. S.**
[35] *Id.*

844704v.4

than the year the chassis was manufactured and the year that the motor home was actually completed.

          3.    <u>Summary Judgment Should Be Granted Against Plaintiff's Claims For Breach of Express Warranties and Breach for Breach of Implied Warranties Because Plaintiff Has Failed to Produce Evidence that the Alleged Non-Conformity Substantially Impairs the Value of the RV</u>

Plaintiff alleges in his third cause of action that Defendants have breached a duty of express warranties under NRS §104.2313. Specifically, NRS §104.2313 provides:

1.   Express warranties by the seller are created as follows:

(a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

2.   It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Additionally, Plaintiff alleges in his fourth cause of action that Defendants have breached a duty of implied warranties under NRS §104.2314 and NRS §104.2315. Specifically, NRS §104.2314 provides:

1.   Unless excluded or modified (NRS 104.2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

2.   Goods to be merchantable must be at least such as:

(a)  Pass without objection in the trade under the contract description; and

(b)  In the case of fungible goods, are of fair average quality within the description; and

(c)  Are fit for the ordinary purposes for which such goods are used; and

(d)  Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e)  Are adequately contained, packaged and labeled as the agreement may require; and

(f)  Conform to the promises or affirmations of fact made on the container or label if any.

3.   Unless excluded or modified (NRS 104.2316) other implied warranties may arise from course of dealing or usage of trade.

Additionally, NRS §104.2315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Here, Plaintiff has no evidence that the RV is a 2013 model year.  Evidence that the RV is a 2014 model year was discussed above.  Defendants truthfully stated to Plaintiff prior to the sale of the RV until present that the subject RV is a 2014 model year.  Moreover, the RV itself, including its certificate of origin and labels/manuals found within the RV, identify it as being a 2014 model year. Based upon Mr. Wheatley's testimony, above, Plaintiff had the option of choosing to register the RV as 2013 or 2014 model year, and Plaintiff apparently chose to have it registered as a 2013 model year for some unknown reason, and despite the fact that doing so was against the policies and procedures of the California DMV.  Defendants have not violated any breach of express warranties or breach of implied warranties.

This Court has already dismissed Plaintiff's causes of action arising under breach of express warranties and breach of implied warranties as to Defendant Camping World, Inc.   This Court should grant summary judgment against Plaintiff's causes of actions arising under breach of express warranties and breach of implied warranties as to all remaining Defendants because Defendants have maintained and provided evidence that shows there is no genuine dispute of material fact that the RV is a 2014 model.

4.   <u>Summary Judgment Should Be Granted Against Plaintiff's Claim Arising Under NRS § 104.1203 and Violation of Nevada's Lemon Law under NRS § 597.600 et seq. Because the RV is a 2014 Model Year and All Alleged Defects are the Result of Plaintiff's Failure to Provide Reasonable and Necessary Maintenance</u>

Plaintiff alleges in his fifth cause of action that Defendants breached the implied duty of good faith under NRS § 104.1203 when Defendants allegedly "refused or delayed to repair the defects in the subject RV" and "refused to remedy the wrong model year RV delivered to the

Plaintiff."[36]  Additionally, Plaintiff alleges in his sixth cause of action that Defendants violated Nevada's Lemon Law, NRS § 597.600 et seq., because Defendants allegedly failed "to make or allow the required repairs."[37]

Plaintiff's allegations that Defendants breached the implied duty of good faith and breached Nevada's Lemon Law when Defendants allegedly "refused or delayed to repair the defects in the subject RV," "refused to remedy the wrong model year RV delivered to the Plaintiff,"[38] and "to make or allow the required repairs"[39] are unfounded.  All of Plaintiff's alleged thirty (30) RV "defects"[40] appear to be a direct result of Plaintiff's failure to provide reasonable and necessary maintenance to the RV or are extremely minor and cosmetic in nature and therefore not covered under warranty.  Despite Plaintiff's allegations to the contrary, Winnebago has repeatedly reached out to Plaintiff and has offered to correct any warranty-covered defects but Plaintiff has refused to oblige.  Plaintiff has presented the RV to Defendants for inspection, but not for any warranty repair work.  Plaintiff's expert own Dr. Guentzler even admitted  the vast majority of the alleged defects in the photographs  that he took of the RV were "cosmetic" rather than functional.[41]  Defendants' expert Enoch Hutchcraft noted that nearly all of Dr. Guentzler's reported "defects" are actually cosmetic imperfections rather than actual warrantable defects that affect functionality.[42]  Further, Mr. Hutchcraft inspected the subject RV and opined that the RV did not contain any defects.[43] More, Mr. Hutchcraft emphasized that "[a]s a practical matter in the most basic RV use, if the engine doesn't run and the consumer cannot drive the RV when they desire to do so, a defect is present.  If there is a cupboard out of adjustment, or a door or floor that squeaks, no defect is present."[44]

Regardless of whether the defects were cosmetic or functional, the Plaintiff did not provide any evidence that the alleged defects were not caused by the Plaintiff.  Instead, the alleged defects were likely caused by the Plaintiff through his use.  Plaintiff and Mr. Wheatley both testified that he

---

[36] *See* **Ex. M,** ¶ 73.
[37] *See Id* at ¶ 79.
[38] *See Id* at ¶ 73.
[39] *See Id* at ¶ 79.
[40] *See* **Ex. Q,** "AmendedComp0038-39," Plaintiff's Handwritten List of Thirty (30) Alleged Defects,
[41] *See* **Ex. I**, 206:6-215:12.)
[42] *See* **Ex. V,** defense expert Enoch Hutchcraft's expert report dated August 7, 2015, at p. 5.
[43] *See Id,* at 5-15.
[44] *See Id,* at 5-15.

and Plaintiff have driven the subject RV for approximately 2,000 miles.[45]   Plaintiff testified that

since purchasing the RV, he and Mr. Wheatley have driven the RV on trips to California; Tulsa,

Arizona; and Nevada.[46]

      This Court has already dismissed Plaintiff's cause of action arising under breach of implied

covenant of good faith and fair dealing as to Defendant Winnebago Industries, Inc. and as to all

Defendants to the extent it is not based upon the implied covenant of good faith and fair dealing in a

contract with Plaintiff.  Additionally, this Court has already dismissed Plaintiff's cause of action for

violation of Nevada's Lemon Laws, NRS § 597.600 et seq., as to Defendant Camping World, Inc.

      This Court should grant summary judgment against Plaintiff's cause of action of arising

under breach of implied covenant of good faith and fair dealing and cause of action for violation of

Nevada's Lemon Law, NRS § 597.600 et seq., as to all Defendants because there are no genuine

dispute of material fact that the RV is a 2014 model year.  Further, Plaintiff's allegation that

Defendants have allegedly refused or delayed to repair the alleged defects is a direct result of

Plaintiff repeatedly refusing Winnebago's repeated overtures to repair any warranty-covered defects.

Plaintiff's alleged defects were cosmetic in nature, and many of these defects were easily cured

during an inspection with Defendants' expert and Defendant representatives (e.g., by simply

changing the input setting to turn the allegedly "completely non-functional" and "defective" TV on).

      5.    <u>Summary Judgment Should Be Granted Against Plaintiff's Claims Arising</u>
           <u>Under the Magnuson-Moss Warranty Act Because the RV is a 2014 Model</u>
           <u>Year and All Alleged Defects are the Result of Plaintiff's Failure to Submit</u>
           <u>the RV for Warranty Repairs</u>

      Plaintiff's seventh causes of action allege Defendants violated, and are therefore liable, under

the Magnuson-Moss Warranty Act, codified as 15 USCS §§ 2301 et seq.  Plaintiff alleges that the

RV is a "consumer product," plaintiff is a "consumer," and Defendants are "warrantors," as defined

in 15 USCS § 2301.  Plaintiff further alleges that he "gave Defendants a reasonable opportunity, on

---

[45] *See* **Ex. C**, 20:4-13.  *See also* **Ex. F**, 42:13-16.
[46] *See* **Ex. F**, 41:14-42:4.

several occasions, to cure their failure, and to comply with the warranties; however, Defendants did not cure, and failed to correct the defects."[47]

Motor homes, in general, are considered "consumer products" under 15 USCS § 2301.[48] However, Plaintiff has failed to allege which specific Defendant(s) is/are "warrantors," as defined in 15 USCS § 2301.  Moreover, the written purchase agreement, signed by Plaintiff, contains the following provision under the heading, "DISCLAIMER OF WARRANTIES," which was initialed by Plaintiff:

> The seller, Camping World RV Sales, hereby expressly disclaims all warranties, either express or implied.  Including any implied warranty of merchantability or fitness for a particular purpose, and Camping World RV Sales neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle.[49]

Furthermore, Plaintiff has not provided <u>any</u> evidence that the alleged defects fall under <u>any</u> valid warranty, and Plaintiff's alleged defects[50] were "caused by damage (not resulting from defect or malfunction) while in the possession of the consumer, or [as a result of] unreasonable use (including failure to provide reasonable and necessary maintenance)."[51]

Moreover, as discussed above, Plaintiff has refused to submit the RV for warranty repairs, and the RV is no longer under warranty. Therefore, it is impossible for Defendants to remedy the alleged defects considering that Plaintiff refuses to submit the RV for any warranty-covered repairs and no longer have an obligation to do so even if any previously covered defects do exist.

Therefore, this Court should grant summary against Plaintiff's cause of action arising under the Magnuson-Moss Warranty Act as to all Defendants because Plaintiff agreed to Defendants' disclaimer of warranties, Plaintiff has not provided any evidence that the alleged defects fall under any valid warranty, and Defendants are unable to cure any warranty-related defects because Plaintiff refuses to submit the RV for repair.

---

[47] *See* **Ex. M** , ¶ 50.
[48] *See* **Ex. W**, *e.g.*, *Woolums v Nat'l RV*, 530 F. Supp. 2d 691 (2008, MD Pa).
[49] *See* **Ex. Q**, "AmendedComp0019" Written Agreement.
[50] *See* **Ex. Q**, "AmendedComp0038-39" Plaintiff's Handwritten List of Thirty (30) Alleged Defects.
[51] *See* **Ex. X**, 15 USCS § 2304(c) which clarifies when the duties of warranties are not required of the warrantor under the Magnuson-Moss Warranty Act.

844704v.4

6.   Summary Judgment Should Be Granted Against Plaintiff's Claim For Fraud Because Plaintiff Failed To Provide Evidence of Fraud And The RV Is A 2014 Model Year, And Was New At The Time Of Purchase

Plaintiff alleges that Defendants knowingly or recklessly falsely represented to Plaintiff that the RV was a new 2014 model year despite the fact that it had "almost 2,000 miles on it at the time of purchase in late 2013."[52]  Plaintiff further alleges that Defendants intended Plaintiff to rely on these representations, Plaintiff did rely on them, and had Plaintiff known the representations were false, Plaintiff would not have purchased the RV, and has suffered actual damages because of it.

A plaintiff alleging fraud is subject to a heightened pleading requirement and must plead the circumstances constituting fraud with particularity. FRCP 9(b); NRCP 9(b); *Rocker v. KPMG LLP*, 122 Nev. 1185, 1192 (2006). This heightened pleading requirement exists to ensure that adequate notice is given to the defendant about the nature of the charges so that it may defend the claims without merely asserting a general denial.  *Rocker*, 122 Nev., at 1192. To comply with FRCP 9(b) and NRCP 9(b), a complaint for fraud must allege the time, place, identity of the parties involved and the nature of the fraud.  *Id.*

To establish a prima facie case of fraudulent concealment, which it appears Plaintiff is attempting to plead here, a plaintiff must offer proof that satisfies five elements:  1) the defendant concealed or suppressed a material fact; 2) the defendant was under a duty to disclose the fact to the plaintiff; 3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than he would have if he had known the fact; 4) the plaintiff was unaware of the fact and would have acted differently if he had known of the concealed or suppressed fact; and 5) as a result of the concealment or suppression of the fact, the plaintiff sustained damages.  *Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 1483-84 (1998).

Here, applying the same analysis from above, the RV was a new 2014 model year at the time of purchase and therefore there was no concealment.  Moreover, according to the transfer of title documentation, the odometer reading—which Plaintiff wrote in his own handwriting—was 1,839

---

[52] *See* **Ex M**, ¶ 69.

844704v.4

miles at the time of purchase and Plaintiff was the first person to whom the dealer transferred title.[53]

Therefore, Plaintiff was aware of the RV's mileage on the odometer at the time of purchase; moreover, according to Google Maps, the direct driving distance from Forest City, Iowa (where the RV was manufactured) to Las Vegas, Nevada (where the RV was purchased) is approximately 1,680 miles.[54]   Clearly, Plaintiff's allegation that Defendants falsely represented to Plaintiff that the RV was new despite the fact that it had miles on it fails because the mere fact that the RV was driven from the place of manufacture to the dealer hardly makes it a "used" RV.   Furthermore, as indicated, Plaintiff knew of the odometer reading at the time of purchase.   Thus, Plaintiff's claim for fraud fails because the Plaintiff has not provided any evidence of fraud by the Defendants and the Plaintiff has failed to provide evidence that he has sustained any damages as a result of the alleged concealment.

This Court has already dismissed Plaintiff's cause of action for fraud against Defendants Camping World, Inc. and Winnebago Industries, Inc.   This Court should grant summary judgment against Plaintiff's cause of action arising under fraud as to the remaining Defendant because Plaintiff has failed to provide evidence of fraud by any of the Defendants, there was no concealment because the RV is a new 2014 model year, and Plaintiff has not indicated that he has sustained any damages as a result of the alleged concealment.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

[53] *See* **Ex. Q**, "AmendedComp0024-26," Transfer of Title Documentation.
[54] *See* **Ex. Y**, Google Maps Driving Directions from Forest City, IA to Las Vegas, NV – a total direct driving distance of 1,680 miles.

844704v.4

**VI.**    **CONCLUSION**

Pursuant to Fed. R. Civ. P. 56(a), and for the reasons stated herein, Defendants respectfully request this Honorable Court grant summary judgment in favor of all Defendants and against all of Plaintiff's claims, and dismiss this action with prejudice.  The Defendants pray for all other just relief.

DATED this 8th day of September, 2015.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

By:     *s/ Tyson E. Hafen, Esq.* _____
Michael M. Edwards, Nevada Bar No. 6281
Tyson E. Hafen, Nevada Bar No. 13139
Nicolas M. Bui, Nevada Bar No. 12709
300 South Fourth Street, 11th Floor
Las Vegas, NV  89101
*Attorneys for Defendants Camping World, Inc., Wheeler RV Las Vegas, LLC, and Winnebago Industries, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP and that on this 8th day of September, 2015, I did cause a true copy of **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** to be electronically transmitted to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Randal R. Leonard, Esq.
Law Office of Randal R. Leonard, Esq.
500 S. Eighth Street
Las Vegas, NV 89101
rleonard999@yahoo.com
*Attorney for Plaintiff*

/s/ Shirley Blackburn
An employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

844704v.4