# Exhibit S

# Exhibit S



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Marketing Practices

Allen Hile
Assistant Director

Direct Dial
202-326-3122

March 5, 2001

Lawrence Henneberger, Esquire
Arent, Fox, Kintner, Plotkin & Kahn
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339

Dear Mr. Henneberger:

    This letter responds to a request, dated January 6, 1999, from D. Reed Freeman, formerly of Arent Fox, requesting an informal staff opinion regarding certain practices in connection with the designation of model years for motor homes and recreational vehicles that are manufactured in more than one stage. Specifically, on behalf of a client of your firm, Mr. Freeman requested a staff opinion on whether it would be a deceptive or unfair practice in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, for:

(1)    a manufacturer of motor vehicles built for use on the public highways and shipped to states which provide spaces on title or registration papers for model years, or which otherwise identify such vehicles by model years in such papers, to fail to identify the model year of such vehicles on such title or registration papers and to indicate that model year on the vehicle's Manufacturer's Certificate of Origin ("MCO");

(2)    a manufacturer of chassis or incomplete vehicles sold to motor home or recreational vehicle manufacturers for use in the manufacture of a completed motor home or recreational vehicle to state "Model Year - Not Applicable" on any MCO such chassis or incomplete vehicle manufacturer may offer that is separate from the MCO issued by the manufacturer of the completed motor home or recreational vehicle; or

(3)    a motor vehicle manufacturer to designate the model year of a multi-stage motor home or recreational vehicle as that of the completed motor home or vehicle, even when that model year is different from that of the vehicle's chassis.

    The opinions expressed below in response to these questions are those of Commission staff only and are not attributable to, nor binding on, the Commission itself or any individual

Lawrence Henneberger, Esquire
Arent, Fox, Kintner, Plotkin & Kahn
March 5, 2001
Page 2

Commissioner. As explained in greater detail below, however, the staff's opinion is that the analysis set forth in the Commission's Enforcement Policy Statement, formerly published at 16 C.F.R. § 14.11, is identical in all material respects to that underlying a series of 1979 cases resolved by consent agreements with six major manufacturers of heavy trucks and other vehicles. It is the opinion of the staff that the analysis embodied in both the Policy Statement and the cases retains its vitality. Therefore:

- It would likely be considered an unfair or deceptive act or practice, in violation of Section 5 of the FTC Act, for a manufacturer of motor vehicles built for use on the public highways and shipped to states which provide spaces on title or registration papers for model years, or which otherwise identify such vehicles by model years in such papers to fail to identify the model year of such vehicles on such title or registration papers and to indicate that model year on the vehicle's MCO;

- It would not likely be considered an unfair or deceptive act or practice, in violation of Section 5 of the FTC Act, for a manufacturer of chassis or incomplete vehicles sold to motor home or recreational vehicle manufacturers for use in the manufacture of completed motor homes or recreational vehicles to state "Model Year - Not Applicable" on any MCO such chassis or incomplete vehicle manufacturer may offer that is separate from the MCO issued by the manufacturer of the completed motor home or recreational vehicle; and

- It would not likely be considered an unfair or deceptive act or practice for a motor vehicle manufacturer to designate the model year of a multi-stage motor home or recreational vehicle to designate the model year of a multi-stage motor home or recreational vehicle as that of the completed motor home or recreational vehicle, even when that model year is different from that of the vehicle's chassis.

Discussion

In 1975, the Federal Trade Commission ("FTC" or "Commission") published a statement of its Enforcement Policy regarding Designation of Model Year of Motor Vehicles to guide manufacturers and distributors in assigning model years to motor vehicles, including truck chassis and incomplete vehicles used in the construction of motor homes.[1] The Enforcement Policy advised manufacturers to clearly and conspicuously disclose the month and year of manufacture on a label permanently affixed to each vehicle and to designate model years according to the physical characteristics or time of manufacture. As indicated in the Federal

---

[1] 40 Fed. Reg. 23845 (June 3, 1975), codified at 16 CFR § 14.11 (1975).

Lawrence Henneberger, Esquire
Arent, Fox, Kintner, Plotkin & Kahn
March 5, 2001
Page 3

Register notice announcing the statement,[2] the Commission issued the statement because of concerns about the misleading practices used by some manufacturers to designate the model years of vehicles which do not change significantly from year to year. In particular, the Commission sought to curtail the practice of changing the model years on Certificates of Origin of vehicles unsold at the end of the year to indicate that they were of the next model year. In addition, the Commission was concerned about the practice of basing the model year designation on the date the vehicle was sold to the retail customer.

The Commission revised its Enforcement Policy statement in 1979[3] ("1979 Statement"). Among other changes, the 1979 Statement added an exception for chassis or incomplete vehicles sold to motor home or recreational vehicle manufacturers who issue separate Certificates of Origin for the completed vehicle. The 1979 Statement exempted manufacturers of the chassis or incomplete vehicles from assigning a model year to their products as long as they put the words "Model Year" or "Year" on the Certificate of Origin, followed by "NA" or "Not Applicable" or "None." (The 1979 Statement required manufacturers to assign model years to only to those vehicles shipped to states which identified vehicles by model years on title or registration papers.)

Shortly after it issued the 1979 Statement, the Commission accepted consent agreements with most of the manufacturers of heavy duty trucks and other vehicles, the features of which changed little from year to year.[4] Those consent agreements settled allegations that the respondent vehicle manufacturers both directly and through their dealers had misrepresented the model year of certain vehicles that had not been sold during the model year when they were manufactured by "redesignating" certificates of origin and other documents to reflect the forthcoming model year, rather than the model year when these vehicles had actually been manufactured. The complaints in these cases did *not* allege that the "split model year" scenario – which is one of your client's chief concerns, as explained in Mr. Freeman's letter – constituted an unfair or deceptive practice. The terms of those consent agreements tracked the provisions set out in the Commission's 1979 Statement and, in fact, expressly incorporated the 1979 Statement's exemption for chassis and incomplete vehicles that are not titled or registered and

---

[2] 40 Fed. Reg. 23845.

[3] 44 Fed. Reg. 30322 (May 25, 1979).

[4] *Mack Trucks, Inc.*, 94 F.T.C. 236 (1979); *Chrysler Motors Corp.*, 94 F.T.C. 245 (1979); *Ford Motor Company*, 94 F.T.C. 254 (1979); *Paccar, Inc.*, 94 F.T.C. 263 (1979); *White Motor Corp.*, 94 F.T.C. 272 (1979); and *International Harvester*, 94 F.T.C. 281 (1979).

Lawrence Henneberger, Esquire
Arent, Fox, Kintner, Plotkin & Kahn
March 5, 2001
Page 4

that are incorporated in motor homes or recreational vehicles which have separate Certificates of Origin prepared by the vehicle manufacturer.[5]

In 1995, the Commission stopped publishing its Enforcement Policy Statement in the Code of Federal Regulations, determining that it was unnecessary and superfluous in light of the guidance provided by the 1979 consent agreements.[6] In the discussion in the Federal Register explaining this action, the Commission stated that "the consent decrees provide adequate guidance for manufacturers . . . [on] how to avoid violating the FTC Act regarding a vehicle's model year."[7] It is the staff's opinion that in so stating, the Commission intended that interested parties would understand that, in all material respects, the guidance formerly set forth in the Enforcement Policy statement is embodied in the consent decrees, and that elimination of publication of the Enforcement Policy statement in no way altered the Commission's analysis of the practices in question.

If you have any further questions, please do not hesitate to contact me.

Sincerely,

Allen W. Hile, Jr.
Assistant Director
Division of Marketing Practices

---

[5] *Mack Trucks, Inc.*, 94 F.T.C. at 242; *Chrysler Motors Corp.*, 94 F.T.C. at 251; *Ford Motor Company*, 94 F.T.C. at 260; *Paccar, Inc.*, 94 F.T.C. at 269; *White Motor Corp.*, 94 F.T.C. at 278; and *International Harvester*, 94 F.T.C. at 287.

[6] 60 Fed. Reg. 42031, 42032 (Aug. 15, 1995).

[7] *Id.*

Attached Regulation was repealed 8-15-95.

It was replaced by Federal Trade Commission (FTC) Staff Opinion, 3-5-01, (letter from Allen Hile to Larry Hennenberger dated 3-5-01)

Both (repealed Regulation and the Staff Opinion) are provided to you because the Staff Opinion states that the elimination of the Regulation in no way altered the FTC'S position on motor home model year designations. The Regulation is more detailed than the Staff Opinion.

30322   Federal Register / Vol. 44, No. 103 / Friday, May 25, 1979 / Rules and Regulations

(2) Because a copy of any document(s) accompanying the report will be made available for public inspection and copying, one copy must be submitted intact and another copy must be edited by the reporting entity to delete the same information which it certified in the report would place a United States person at a competitive disadvantage if disclosed. In addition, the reporting entity may delete from this copy information that is considered confidential and that is not required to be contained in the report (e.g., information related to foreign consignee). This copy should be conspicuously marked with the legend "Public Inspection Copy." With respect to documents accompanying reports received by the Department on or after July 1, 1979, the public inspection copy will be made available as submitted whether or not it has been appropriately edited by the reporting entity as provided by this paragraph.

Dated: May 22, 1979.

Stanley J. Marcuss,
*Deputy Assistant Secretary for Trade Regulation.*

[FR Doc. 79-16416 Filed 5-24-79; 8:45 am]
BILLING CODE 3510-25-M

---

**15 CFR Part 377**

**Short Supply Controls and Monitoring; Non-Substantive Revisions in Export Administration Regulations**

**AGENCY:** Office of Export Administration, Bureau of Trade Regulation, U.S. Department of Commerce.

**ACTION:** Final rule.

**SUMMARY:** This rule amends 15 CFR Part 377 by making the necessary editorial changes to conform the CFR with the Department's Export Administration Regulations. These changes eliminate obsolete material, revise form numbers, update paragraph headings and numbers, and make other non-substantive changes.

**EFFECTIVE DATE:** May 25, 1979.

**FOR FURTHER INFORMATION CONTACT:**
Mr. Dale F. Snell, Jr., Chief, Management Services Branch, Office of Export Administration, U.S. Department of Commerce, Washington, D.C. 20230 (Tel. 202-377-2440).

**SUPPLEMENTARY INFORMATION:** It has been determined that this regulatory revision is "not significant" within the meaning of Department of Commerce Administrative Order 218-7 (44 FR 2082 et seq., January 9, 1979) and Industry and Trade Administration Administrative Instructions 1-6 (44 FR 2093 et seq., January 9, 1979), which implement Executive Order 12044 (43 FR 12661 et seq., March 23, 1978). "Improving Government Regulations".

Accordingly, the Export Administration Regulations (15 CFR Part 377 et seq.) are amended as follows:

**§ 377.2 [Amended]**

1. Section 377.2(c)(1), the first sentence is amended to read " * * * an exporter shall submit Form DIB-669P, Past Participation Statement, on which the exporter shall list his exports of the commodity(ies) during the specified base period."

**§ 377.2 [Amended]**

2. Section 377.2(e) is amended by replacing "are listed in a Supplement" in the second sentence with "will be listed in a Supplement."

**§ 377.4 [Amended]**

3. Section 377.4(i)(1) the first sentence is amended by replacing "Form DIB-622P" with "Form ITA-622P."

**§ 377.6 [Amended]**

4. Section 377.6(d)(12), the second set of lower case Roman numerals should be replaced by A, B, C, and D.

**§ 377.6 [Amended]**

5. Section 377.6(e)(1), the first sentence is amended by replacing "Form DIB-622P" with "Form ITA-622P."

**§ 377.15 [Amended]**

6. Section 377.15(g) is amended by inserting a heading: "Other Applicable Provisions" following "(g)."

(Sec. 4 Pub. L. 91-184, 83 Stat. 842 (50 U.S.C. App. 2403), as amended; E.O. 12002, 42 FR 35623 (1977); Department Organization Order 10-3, dated December 4, 1977, 42 FR 64721 (1977); and Industry and Trade Administration Organization and Function Order 45-1, dated December 4, 1977, 42 FR 64716 (1977).)

Stanley J. Marcuss,
*Deputy Assistant Secretary for Trade Regulation.*

[FR Doc. 79-16506 Filed 5-24-79; 8:45 am]
BILLING CODE 3510-25-M

---

**FEDERAL TRADE COMMISSION**

**16 CFR Part 14**

**Assigning Model Years to Motor Vehicles**

**AGENCY:** Federal Trade Commission.

**ACTION:** Final Rule: Revision of Enforcement Policy Statement.

**SUMMARY:** The Federal Trade Commission has revised its Enforcement Policy to guide manufacturers and distributors in assigning model years to motor vehicles. Vehicles covered include all motor vehicles intended for use upon public highways including truck chassis and incomplete vehicles used in the construction of motor homes. The revision effectively requires manufacturers to assign model years to vehicles shipped to all states except Hawaii. It also requires manufacturers to establish written standards and to follow Commission guidelines for assigning model years. It also prohibits dealers from representing that vehicles may be titled or registered by any model years other than the model years indicated by the manufacturers. The revision was made after an inquiry of state motor vehicle administrators revealed that some dealers and customers of heavy duty trucks were filling in model years on applications for title or registration when manufacturers did not identify the vehicles by model year. These practices, it was felt, like other practices prohibited by the original enforcement policy, could mislead subsequent purchasers as to date of manufacture and hinder market forces that normally lead to price cuts of unsold vehicles at the end of model years.

**DATE:** Effective date: May 25, 1979.

**FOR FURTHER INFORMATION CONTACT:**
Paul Sailer, Attorney, Division of Professional Services, Federal Trade Commission, Washington, D.C. 20580 (202) 724-1037.

**SUPPLEMENTARY INFORMATION:** This policy revises the enforcement policy which was issued by the Commission on June 3, 1975, 40 FR 23845.

16 CFR 14.11 is amended to read as follows:

**§ 14.11 Assigning model years to motor vehicles.**

(a) The Federal Trade Commission has been concerned about misleading practices some manufacturers have used to identify the model years of heavy duty trucks and other vehicles whose features change little from year to year.

(b) Two practices have been of particular concern:

(1) some manufacturers have changed the identification papers of unsold vehicles at the end of one model year to show that the vehicles are of the next model year;

(2) some manufacturers have let their branches or dealers base the model year on the date of sale to retail purchasers.

(c) These practices may mislead buyers as to the date of manufacture. They may also hinder market forces that normally lead to price cuts at the end of model years.

Guidelines

(d) To prevent deception and help manufacturers avoid violating the Federal Trade Commission Act, the Commission has issued the following guidelines for motor vehicle manufacturers and dealers. They apply to all motor vehicles built for use upon public highways. These include truck chassis and incomplete vehicles used in building motor homes. The guidelines are:

(1) Manufacturers of motor vehicles must put on each vehicle a permanent label. The label must show clearly and conspicuously the month and year of manufacture. Following the certification rules of the National Highway Traffic Safety Administration, 49 CFR 567 (1977), will satisfy this requirement;

(2) Manufacturers must assign model years to all vehicles shipped to states which provide spaces on title or registration papers for model years, or which otherwise identify vehicles by model years on such papers. Manufacturers must indicate the model years on the Certificates or Statements of Origin of all vehicles shipped to such states. (As of July, 1978, all states except Hawaii either provided spaces on title or registration papers for model years, or otherwise identify vehicles by model years on such papers;

(3) In assigning model years, manufacturers must follow written standards set for each model before a model year starts;

(4) The standards must be uniformly applied to all vehicles of a particular model, however they are sold. In particular, the same standards must be used for vehicles sold through factory-owned branches and through independent dealers;

(5) A standard once set must be used throughout a model year;

(6) A standard must base model year on either the date of manufacture or features of the vehicle. The standard must be such that all vehicles assigned a model year which are manufactured on the same date with the same features are assigned the same model year;

(7) The model year must be assigned to each vehicle on or before its date of manufacture;

(8) Once a vehicle is assigned a model year, the model year must not be changed. But, mistakes in applying the standards may be corrected:

(9) Dealers must not represent to customers or to state title or registration officials (on application forms or otherwise) that vehicles are of any model years or that they should be titled or registered by any model years other than the model years indicated by the manufacturers on the Certificates of Origin for those vehicles. Dealers must not represent that vehicles are of any model years if no model years are indicated on Certificates of Origin for such vehicles. Manufacturers must not make any such representations or help or encourage dealers to make such representations.

(10) *Exceptions.* (i) Guidelines (2) through (8) do not apply to chassis or incomplete vehicles sold to motor home or recreational vehicle manufacturers who issue separate Certificates of Origin. Manufacturers of such chassis or incomplete vehicles need not assign model years to these vehicles. If they do not assign model years, they must put on Certificates of Origin, the words "Model Year" or "Year," followed by "NA" or "Not Applicable" or "None."

(ii) As indicated in Guide (2) manufacturers do not have to assign model years to vehicles shipped to any state which does not identify vehicles by model year on title or registration papers. Manufacturers who do not assign model years to vehicles shipped to such a state, must put on the Certificates of Origin the words "Model Year" followed by "NA" or "Not Applicable" or "None."

Interpretation and Enforcement

The Commission recognizes that this Enforcement policy Statement may not provide clear guidance in every situation that may arise. The staff of the Bureau of Consumer Protection will be available to answer questions and help industry members comply with these guidelines. Should subsequent investigation disclose violations of law, the Commission will take appropriate enforcement action.

By direction of the Commission, dated May 4, 1979.

Carol M. Thomas,
*Secretary.*

[FR Doc. 79-16350 Filed 5-24-79; 8:45 am]
BILLING CODE 6750-01-M

DEPARTMENT OF ENERGY

Federal Energy Regulatory Commission

[18 CFR Parts 3 and 284]

[Docket No. RM79-34]

Transportation Certificates fo Gas for the Displacement of F

**AGENCY:** Federal Energy Regula Commission, DOE.

**ACTION:** Final rule.

**SUMMARY:** The Federal Energy Regulatory Commission gives n that, for the purpose of displaci oil, it hereby issues special rule authorizing the transportation c gas purchased by certain end-u rule was initiated by the March proposal of the Economic Regu Administration of the Departm Energy. It serves to further the of displacing fuel oil with natur that the nation's current shorta certain crude oil products may minimized.

**DATE:** Effective May 17, 1979.

**FOR FURTHER INFORMATION CON** Robert Platt, Office of the Gene Counsel, 825 North Capitol Stre Washington, D.C. 20426 (202) 2 or James Kiely, Office of Pipelir Producer Regulation 825 North Street, N.E., Washington, D.C. 2 (202) 275-4384.

I. Introduction

On March 19, 1979 the Econo Regulatory Administration (ER. Department of Energy propose rulemaking to the Commission to section 403(a) of the DOE Organization Act, 42 U.S.C. 717 ERA proposed rule[1] would esta procedure for the issuance of o certificates of public convenier necessity under Section 7(c) of Natural Gas Act, 15 U.S.C. 717f authorizing the transportation gas purchased by end-users in displace fuel oil. On April 2, 19 ERA established a procedure t the eligibility of end-users for t program.[2] The Commission pro written comment procedure on proposed rule, and held a publi in Washington, D.C. on April 30 The ERA proposed rule was pr by John F. O'Leary, Deputy Sec Energy. Comments on the ERA rule were received from Senato.

---
[1] 44 FR 17644 (March 22, 1979).
[2] 10 CFR Part 595, 44 FR 20398 (April 5
[3] Order Commencing Rulemaking, 44 F (April 11, 1979).