MICHAEL M. EDWARDS, ESQ.
Nevada Bar No. 6281
NICHOLAS L. HAMILTON
Nevada Bar No. 10893
Wolfenzon Rolle Edwards
6725 Via Austi Parkway, Suite 260
Las Vegas, Nevada 89119
(702)836-3138
medwards@wolfenzon.com
nhamilton@wolfenzon.com

Attorneys for Defendants Camping World, Inc.
Wheeler RV Las Vegas, LLC, and Winnebago Industries, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KIM BOLIBA, | CASE NO.: 2:14-cv-01840-JAD-NJK |
| Plaintiff, | |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** |
| CAMPING WORLD, INC.; CAMPING WORLD RV SALES, LLC.; WHEELER LAS VEGAS RV d/b/a CAMPING WORLD RV SALES, WINNEBAGO INDUSTRIES, INC., DOES 1-10; and ROE Corporations 1-10, | |
| Defendants. | |

Defendants Camping World, Inc. ("Camping World"), Wheeler RV Las Vegas, LLC ("Wheeler") and Winnebago Industries, Inc. ("Winnebago"), ("Defendants") by and through their counsel of record, Wolfenzon Rolle Edwards, respectfully submits their Reply in support of their motion for summary judgment made pursuant to Fed. R. Civ. P. 56 as to all of Kim Boliba's ("Plaintiff") causes of action asserted against Defendants in the Plaintiff's Second Amended Complaint ("Second Amended Complaint").

//

//

1

1      This motion is based on the memorandum in support, any papers and pleadings on file,

2  any oral argument adduced by counsel, and any other matters appropriate for this Court's

3  determination.

4      DATED this *20* day of January, 2016.

5                  **WOLFENZON ROLLE EDWARDS**

6

7                  MICHAEL M. EDWARDS, ESQ.

8                  Nevada Bar No. 6281
                NICHOLAS L. HAMILTON

9                  Nevada Bar No. 10893
                6725 Via Austi Parkway, Suite 260

10                  Las Vegas, Nevada 89119
                702-836-3138

11

12                  ***Attorneys for Defendants*** Attorneys for
                Defendants Camping World, Inc.

13                  Wheeler RV Las Vegas, LLC, and Winnebago
                Industries, Inc.

14            **MEMORANDUM OF POINTS AND AUTHORITIES**

15  **I.**      **OVERVIEW**

16      The Plaintiff's opposition presents the following questions, asserting that they each

17  present a triable issue of fact.  This is not the case.

18      *1.*    *First, is the vehicle sold Plaintiff Kim Boliba a 2013 or a 2014 model?*

19      The RV is a 2014 model.  As discussed in Defendants' motion and as reiterated below,

20  statutory authority and testimony of employees of the California DMV the evidence

21  conclusively establishes that the RV is 2014 model.  The Plaintiffs have no evidence to dispute

22  this fact apart from their bald assertions and speculations derived from Winnebago's

23  brochures.

24      *2.*    *Did the Plaintiffs' receive the brochures?*

25      This question is irrelevant.  There is not an iota of evidence that indicates that

26  Winnebago's brochures were material to the discussions engaged in at the time of purchase,

27  nor is there any evidence that the Plaintiffs harbored ay expectations based  upon information

28  contained within those brochures.  The Plaintiffs did not see the brochures until months after

2

the time of purchase.  The Plaintiffs repeatedly inspected the RV and test drove it as well prior to purchase.  The Plaintiffs got the RV they wanted and the brochures simply do not figure into the basis of the bargain.

      *3.    Did Mr. Duston conceal the brochure in order to sell a 2013 model to Mr. Boliba?*

      There is <u>no</u> evidence of any concealment with regard to any issue pertinent to this matter.  The Plaintiffs received a new <u>2014</u> Winnebago Itasca Ellipse 42GD.  The RV was assembled in stages.  The VIN for the *Freightliner chassis* is 2013, but the final stage of assembly is determinative and it is the final stage of assembly that mandates that this RV be designated a 2014.  The Plaintiffs purchased a 2014 Winnebago Itasca Ellipse 42GD and that is precisely what they received.

      *4.    Is there a genuine issue of fact as to whether the non-conformities or defects are what either expert claims?*

      No.  Dr. Guentzler's report simply presents a laundry list of issues, most of which are of no consequence and her admitted at this deposit that almost all of the issues were cosmetic.  Further the Plaintiff has not provided any evidence that the alleged defects fall under any valid warranty, did not while in the possession of the consumer or were not a result of unreasonable use (including failure to provide reasonable and necessary maintenance).

      *5.    Did Mr. Boliba give Defendants a chance to make repairs on the subject vehicle?*

      No.  The only limited warranty at issue in this litigation is the one year limited issue by Winnebago.  The Good Sam Extended warranty purchased by the Plaintiff[1] named Camping World RV Sales as the administrator of the warranty and that entity was dismissed from the case.

      After the initial repairs were conducted prior to the Plaintiff's purchase, the Plaintiff took possession of the RV and never presented it for warranty repair within the twelve month

---

[1] The extended warranty was attached to the Plaintiff's opposition but does not appear to have been disclosed during discovery.  The Defendants' Motion provided a detailed explanation of the Plaintiffs' dilatory discovery practices.  These practices appear to continue on to the present.

1   period that Winnebago's limited warranty was in effect.  This is indisputable.  The only

2   assertion the Plaintiff makes in contradiction concerns conversations he claims to have had

3   with Camping World Las Vegas and Camping world Vacaville.  When the Plaintiff went to

4   Vacaville, he did not even take the RV with him.[2]

5       Notwithstanding, the Plaintiffs make no effort to identify which issues might actually

6   be covered by Winnebago's limited warranty when the Plaintiff took the RV to Findlay RV.

7   **II.     DISCUSSION REGARDING THE PLAINTIFF'S STATEMENT OF FACTS**

8       **A.     <u>The evidence establishes that the subject RV is a 2014 model.</u>**

9       The Plaintiff persists in his contention that the RV is a 2013 rather than a 2014 model

10  year.  Prior to the filing of the Defendant's motion, the Plaintiff based his contentions upon

11  its erroneous registration with the California Department of Motor Vehicles.   As the

12  Defendants have pointed out the Plaintiff's partner, Richard Wheatley, admitted during his

13  deposition that when he and the Plaintiff took the RV to the California DMV to have it

14  registered, the DMV employee actually gave <u>them</u> the option of having the RV registered as

15  either a 2013 or 2014 model year, and asked Plaintiff and Mr. Wheatley "[d]o you want me

16  to register it as a '13 or '14?"[3]  Kitty Kramer, an administrator of the California DMV

17  confirmed during her deposition that the RV was registered incorrectly, and should have been

18  registered as a 2014 model year pursuant to California DMV vehicle registration policies and

19  procedures.[4]

20      In the face of these facts, the Plaintiff now bases his claims upon specious conclusions

21  and outright speculation concerning Winnebago's sales brochures.  In short, the Plaintiff

22  argues that since the brochures show RVs with two awnings and list colors other than

23  "Platinum," as paint options, the RV _must_ be a 2013 model.

[2] _See_ Ex. Y, additional excerpts of transcript of deposition of Richard Wheatley, p. 77:12-19.
[3] _See_ Ex. C, Deposition Transcript of Richard Wheatley, at 56:1-2.
[4] _See_ Ex. D, Deposition Transcript of Kitty Kramer, CA DMV PMK, at 40:17-22; 45:18-46:1; _see also_ Ex. E, Email Communication from California DMV and relevant section from the Vehicle Industry Registration Manual explaining that the model year of "split-year" motorhomes (i.e., when the chassis and body are completed in different years) <u>is designated by the final stage motorhome manufacturer</u>; here, the motorhome was designated a 2014 model year by the final stage motorhome manufacturer, Winnebago .

4

The only evidence offered by the Plaintiff's concerning whether such features as paint schemes or awnings are exclusive to particular model years comes from an examination of Winnebago's brochures.

The Plaintiffs' opposition makes the bizarre allegation that Winnebago "concealed" the brochures because the brochures contributed to the basis of the bargain.   There is no evidence that the brochures contributed to the discussion in any way.   The inescapable fact is that the Plaintiff physically examined the *subject* RV, and Mr. Wheatley test drove *that* RV and the Plaintiff agreed to purchase *that* RV along with the features present on *that* RV:

> 19 Q. And you got the RV that you inspected, correct?
> 20 A. Correct.
> 21 Q. You got the RV that you chose yourself, correct?
> 22 A. Correct.
> 23 Q. You got the RV that you and Mr. Wheatley test drove,
> 24 correct, or that he test drove, correct?
> 25 A. Yeah, for about five miles.
> …
> 1 Q. You got the RV that you paid for, correct, the one
> 2 that you selected?
> 3 A. Correct.[5]

Kim Boliba further testified:

> 10 Q. Sorry. How many times did you say Richard test
> 11 drove it?
> 12 A. Once or twice.
> 20 Q. How long did you and Mr. Wheatley inspect the RV
> 21 prior to purchase?
> 22 A. We went twice, with the salesman both times.
> 23 Q. On different days?
> 24 A. Yes.
> 25 Q. And for how many hours did you inspect it?
> 1. A. Two.
> 2. Q. Each day? Or one hour each day approximately?
> 3. A. I can't remember exactly.[6]

The Plaintiff simply cannot argue that the brochures raised any expectations that were not met by the RV they saw themselves purchased in person.  The Plaintiff's arguments based upon the brochures are *non sequitur* to any relevant issue and must be discarded.

Further, brochures are not by any means an authoritative source concerning model years.  As Defendants' expert, Enoch Hutchcraft points out:

---

[5] *See* Ex. Z, additional excerpts of transcript of deposition of Plaintiff, Kim Boliba at p.65; 67
[6] *See* Ex. Z at Kim Boliba p.48, 49.

1    These brochures are rife with proper disclaimers from Winnebago
     Industries explaining that the items in the photographs and spec sheet are
2    subject to change. In addition to the formal disclaimers, it is common
     practice for RV manufacturers to carry exterior paint colors, paint
     schemes along with interior fabrics as well as floor plans forward from
3    one year to the next. It is also common for early model year units to have
     similar or even identical exterior paint colors, paint schemes, interior
4    fabrics, floor plans and other specs as prior model years because
     motorhomes are typically manufactured continuously throughout the
5    calendar year.[7]

6    In the end, any doubts that the brochures may raise as to the RV's model year are

7    obviated by the conclusive deposition testimony and statutory authority that establishes that

8    the RV is a 2014 model as discussed above.

9          **B.    The Defects complained of by the Plaintiff, if they even exist, do not
                   substantially impair the value of the RV and any subjective dissatisfaction
10                 the Plaintiff claims he feels is exaggerated for the purpose of this litigation.**

11         The Plaintiff's expert William Guentzler, Ph.D. conceded that nearly all of Plaintiff's

12   alleged "defects" are actually minor cosmetic imperfections for which Plaintiff has produced

13   no evidence he did not cause himself through normal wear and tear during the nearly twenty-

14   one (21) months he owned the RV (including approximately 2,000 thousand miles of driving

15   and many weeks of living in the RV[8]). Specifically, Plaintiff's expert Dr. Guentzler took 123

16   photographs of the RV and testified that the vast majority of the alleged defects in the

17   photographs were "cosmetic" rather than functional.[9]

18         All of Plaintiff's alleged "defects"[10] appear to be a direct result of Plaintiff's failure to

19   provide reasonable and necessary maintenance to the RV or are extremely minor and cosmetic

20   in nature and therefore not covered under warranty.

21         Regardless of whether the defects were cosmetic or functional, the Plaintiff did not

22   provide any evidence that the alleged defects were not caused by the Plaintiff. Instead, the

23   alleged defects were likely caused by the Plaintiff through his use. Plaintiff and Mr. Wheatley

24   both testified that he and Plaintiff have driven the subject RV for approximately 2,000 miles.[11]

25

26   _____

27   [7] Hutchcraft Page 17 of22
     [8] See Ex. F, 42:13-16.
     [9] See Ex. I, Deposition of William Guentzler, 206:6-215:12.)
     [10] See Ex. Q, "AmendedComp0038-39," Plaintiff's Handwritten List of Thirty (30) Alleged Defects,
28   [11] See Ex. C, 20:4-13, see also Ex. F, 42:13-16.

6

1   Plaintiff testified that since purchasing the RV, he and Mr. Wheatley have driven the RV on

2   trips to California; Tulsa, Arizona; and Nevada.[12]

3        Despite Plaintiff's allegations to the contrary, Winnebago has repeatedly reached out

4   to Plaintiff and has offered to correct any warranty-covered defects but Plaintiff has refused

5   to oblige.

6        Plaintiff has presented the RV to Defendants for inspection, but not for any warranty

7   repair work.

8   **C.    The Plaintiff contends that the Defendants have refuse to repair the RV,
        in point of fact, the Plaintiff himself has declined to present the RV for
9       repair since he purchased it.**

10       Repairs were performed prior to the Plaintiffs picking up the RV to address 30 issues

11  raised by the Plaintiffs.[13]   The Plaintiff's RV was inspected by Mr. Guenztler on March 5,

12  2015, 15 months after the Plaintiffs took delivery of the RV.   The Plaintiffs never identify

13  which specific issues were not addressed prior to their purchase.   What is undisputed is that

14  the Plaintiffs took delivery of the RV at the time of purchase and never returned with it to

15  have warranty work performed.[14]

16       The Plaintiffs' opposition relies solely upon vague assertions from the depositions of

17  Kim Boliba and Richard Wheatley to assert that necessary repairs were indefinitely delayed

18  while awaiting receipt of repair parts.   The Plaintiff's opposition make no effort to identify

19  which parts were on order and why that their purported exchanges with Camping World Las

20  Vegas and Vacaville prevented them from presenting their RV, even once, for repairs since

21  they picked it up in December of 2013.   With regard to which parts had been on order, the

22  entire universe of documentation that the Plaintiff relies upon are those attached as Plaintiff's

23  Exhibit 8, Bates stamped WINN0021-WINN0041.

24       To this day, the Plaintiff has not brought his RV back for warranty repairs after they

25  picked it up.   Given the severity of the Plaintiff's allegations concerning the state of the RV,

26  _____

27  [12] *See* Ex. F, 41:14-42:4.
    [13] *See* Ex. Y, 23:9-18.

28  [14] The Plaintiffs had work performed on the RV by Apache RV that was never disclosed. *See* Ex. Y, 33:13-17;
    41:2-6.   Aside from the deposition testimony of Mr. Wheatley, we have no of knowing precisely what work was
    performed at this time.

1   this behavior is simply not rational, and cannot be explained away by the Plaintiffs' purported

2   exchanges with Camping work Vacaville and Camping World Las Vegas.

3        With regard to the Plaintiff's alleged exchanges hearsay exchanges with Findlay RV,

4   the Plaintiffs make no effort to identify which issues might actually be covered by

5   Winnebago's limited warranty, the terms of which are not subject to dispute. In any event,

6   the exchange with Findlay occurred *after* **the one year manufacturer's warranty with**

7   **Winnebago had lapsed.**[15]

8        Defendants were agreeable to having Findlay RV <u>repair</u> any warranty-covered defects,

9   but Plaintiff only wanted Findlay RV to perform an <u>inspection</u> of the RV (in effect having

    Defendants' affiliated dealer act as Plaintiff's expert on Defendants' dime). In fact, to this
10
    date, Plaintiff has never—ever—taken the RV to any dealership to have any warranty-covered
11
    defects actually repaired.
12

13       **D.**    <u>**Stripped of any other substantial factual basis for maintaining a claim, the**</u>
     <u>**Plaintiff now relies upon the unfounded an speculative allegation the RV**</u>
     <u>**was involved in an accident that caused he windshield to be damaged.**</u>
14
          The testimony of Dr. Guentzler proffered by the Plaintiffs concerning "major" non-
15
    cosmetic defects is limited to Dr. Guentzler's testimony regarding an "impact" that is
16
    speculated to have occurred to the windshield and which affected its fit and finish.[16] There is
17
    zero evidence of the RV having been involved in an accident of any kind prior to its transfer
18
    to the Plaintiffs. Further, Dr. Guentzler has no way of knowing what may have happened to
19
    the RV in the 15 months it was in the Plaintiffs' hands before he inspected it. As discussed
20
    above, the Plaintiffs failed to disclose work performed by Apache RV prior to the deposition
21
    of Richard Wheatley. Additionally, the Plaintiff and Mr. Wheatley inspected the RV for two
22
    hours and test drove it upon purchase. If the window issues were truly as egregious as Dr.
23
    Guentzler states they are, and if they existed upon the time of purchase. Then it stands to
24
    reason that either the Plaintiff or Mr. Wheatley should have noticed it.
25        As discussed in the Defendants' motion, the transfer of title documentation indicates

26   that Plaintiff purchased the RV directly from the dealer who purchased the RV directly from

27

28   [15] *See* Plaintiff's Exhibit 8, WINN0013.
     [16] *See* Plaintiffs' SOF, Paragraph 26.

1   Winnebago; the transfer of title documentation further indicates that the odometer reading—

2   which Plaintiff filled in himself—was 1,839 miles at the time of purchase, which

3   approximately equates to the driving distance from the Winnebago manufacturing facility to

4   Camping World Las Vegas.

###### E. The report of Enoch Hutchcraft places the Plaintiff's defect allegations and Dr. Guentzler's report in their proper context and shows that the Plaintiff's subjective dissatisfaction with RV is not objectively credible.

7   The Plaintiff seeks to minimize the testimony of Enoch Hutchcraft, by characterizing

8   him as a mere mechanic. This is a grossly inaccurate representation. As Mr. Hutchcraft's

9   experience includes, among other things, a 23 year tenure as vice president of the Monaco

10  Coach Corporation. A copy of Mr. Hutchraft's curriculum vitae is attached hereto.[17]

11  Mr. Hutchcraft's report appropriately and objectively conveys the import of the

12  Plaintiffs' issues, the vast majority of which are not issues at all. The Plaintiff's opposition

13  cites to Milicevic,[18] but glosses over the objective component of the two part test in that case

    while relying exclusively upon the Plaintiff's subjective appraisal of those issues. Mr.

14  Hutchcraft's report appropriately addresses the objective component of the Milicevic test.

15  Further, the Plaintiff never presented his RV for warranty work after he purchased it.

16  This is proof positive that the Plaintiff's issues, from their own subjective point of were

17  inconsequential as these issues apparently did not bother the Plaintiff overmuch. This matter

18  presents a classic example of minor issues blown out of all proportion solely for the purpose

19  of litigation.

20  The Plaintiff's own testimony demonstrates that he is unconcerned with having repairs

21  performed:

22  / /

23  / /

24

25

26

27  [17] Ex. AA, curriculum vitae of Enoch Hutchcraft.
    [18] Milicevic v. Mercedes-Benz USA, LLC, 256 F. Supp. 2d 1168, 1176 (D. Nev. 2003) aff'd sub nom. Milicevic
28  v. Fletcher Jones Imports, Ltd., 402 F.3d 912 (9th Cir. 2005) citing Gen. Motors Corp. v. Dohmann, 247 Conn.
    274, 291, 722 A.2d 1205, 1214 (1998)(emphasis added).

9

15 Q. Do you plan on keeping the RV if the alleged
16 warranty-covered defects are repaired and corrected?
17 A. No, I don't, because it's not the correct year.
18 Q. So your goal is to get rid of the RV?
19 A. The goal is for them to honestly give me a 2'14 as
20 promised, as sold to me, not a 2'13 trying to disguise as a
21 2'14 and trying to litigate it as a 2'14. I think that's very
22 dishonest of them.[19]

As the above testimony demonstrates, the Plaintiff does not care if his RV repaired. He instead insists upon pursuing his baseless allegation that the RV is anything but a 2014 model. It is far more likely that Mr. Boliba now seeks to employ the judicial process to alleviate his buyer's remorse.

## III. SUMMARY JUDGMENT IS PROPER

**A.    Summary Judgment Should Be Granted Against Plaintiff's Claims of Violation of the Nevada Lemon Law under NRS § 597.600 et seq. Because the RV is a 2014 Model Year and All Alleged Defects are the Result of Plaintiff's Failure to Provide Reasonable and Necessary Maintenance**

The Plaintiff's discussion regarding the Nevada Lemon Law is limited to their assertions that the Defendants allegedly failed "to make or allow the required repairs."[20]

*1.    Neither presumption set forth in NRS § 597.630 applies.*

Neither presumption set forth in NRS § 597.630, the portion cited by the Plaintiff, has any applicability to the facts of this case. The Plaintiff cites[21] This case is distinguishable in that it involved allegations of defects to an automobile, a Mercedes-Benz S-500.[22] Further, the court's application of facts to the law in Milicevic was very straightforward and does not open the statute to interpretation as the Plaintiffs' opposition suggests. As to subsection (a), the automobile in Milicevic involved issues that persisted through four or more episodes of repair, including serious issues with the brakes. No similar set of circumstances exists here.

As to subsection (b), there is no evidence whatsoever that the RV was out of service for any length of time since it was purchased. The District Court Judge in Milisevic found a

---

[19] *See* Ex. Z at p. 94.
[20] *See Id* at ¶ 79.
[21] Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912 (9th Cir. 2005).
[22] NRS 597.630.

10

1   violation of the Lemon Law after it was determined that it was defendant's repair shop 55

2   days.  In this instance, the RV never left the Plaintiff's possession and there is no evidence

3   that the RV was ever unfit for its use as an RV.

4            2.      *The Defendants have not been afforded an adequate opportunity to perform repairs.*

5            As to the question of whether the issues complained of persisted through a reasonable

6   number of repair attempts, Defendants assert they have not had an adequate opportunity

7   perform repairs.   Again the Plaintiff relies upon <u>Milicevic</u> to argue that the RV was

8   substantially impaired.   One significant manner in which the present case differs from

9   <u>Milicevic</u> is that the automobile in that case was presented for repairs 8 days after purchase

10   and those repairs caused vehicle to be in the defendant's repair shop for 33 days.[23]  The vehicle

11   was returned for additional repairs two months later where it remained in the repair shop for

12   another 17 days.  In this instance, the Plaintiff had repairs performed prior to purchase, but

13   has not presented it for additional repairs since and approximately 15 months passed before it

14   was inspected by Dr. Guentzler.

15            The Plaintiff has not presented his RV for repairs since he purchased it.  Rather he

16   weakly and generally argues that he was given a "runaround" when describing his hearsay

17   discussions with various unnamed employees of various dealerships.   Despite Plaintiff's

18   allegations to the contrary, Winnebago has repeatedly reached out to Plaintiff and has offered

19   to correct any warranty-covered defects but Plaintiff has refused to oblige.    Plaintiff has

20   presented the RV to Defendants for inspection, but not for any warranty repair work, the

21   Plaintiff's self-serving testimony notwithstanding.

22            3.      *The Plaintiff must show substantial impairment objectively as well as subjectively and there is no evidence that what issues may be present are not due to the Plaintiff's own use of the RV.*

23

24   The test of substantial impairment has both a subjective and objective component:

25            "The standard is subjective in that the fact finder ***first*** must examine the subjective desires, needs and circumstances of the particular customer.

26   In light of those desires, needs and circumstances, ***the fact finder then must make an objective determination as to whether the value of the***

27

28   _____

[23] <u>Milicevic</u>, 256 F. Supp. 2d at 1171 (D. Nev. 2003).

*motor vehicle to the consumer has, in fact, been substantially impaired.*
In making this determination, the fact finder must determine that the consumer's subjective desires, needs and circumstances are reasonable."[24]

The Plaintiff simply glosses over the objective component of the Milicevic test, arguing instead that if the Plaintiff is perturbed to any degree by an issue, then he must recover. This is not the case.

Again, the subjective impairment of the RV to the Plaintiff, or the lack thereof, appears to be illustrated by his failure to present to RV for repair after purchase. Further, Plaintiff and Mr. Wheatley both testified that he and Plaintiff have driven the subject RV for approximately 2,000 miles.[25] Plaintiff testified that since purchasing the RV, he and Mr. Wheatley have driven the RV on trips to California; Tulsa, Arizona; and Nevada.[26] The RV was clearly functional and the individual issues complained of by the Plaintiff do not appear to have been an overriding concern.

Dr. Guentzler even admitted the vast majority of the alleged defects in the photographs that he took of the RV were "cosmetic" rather than functional. Defendants' expert Enoch Hutchcraft noted that nearly all of Dr. Guentzler's reported "defects" are actually cosmetic imperfections rather than actual warrantable defects that affect functionality. Further, Mr. Hutchcraft inspected the subject RV and opined that the RV did not contain any defects.

Regardless, the Plaintiff did not provide any evidence that the alleged defects were not caused by the Plaintiff. Instead, the alleged defects were likely caused by the Plaintiff through his use. All of Plaintiff's alleged RV "defects"[27] appear to be a direct result of Plaintiff's failure to provide reasonable and necessary maintenance to the RV or are extremely minor and cosmetic in nature and therefore not covered under warranty. Many of these defects were easily cured during an inspection with Defendants' expert and Defendant representatives (e.g., by simply changing the input setting to turn the allegedly "completely non-functional" and "defective" TV on).

---

[24] Milicevic v. Mercedes-Benz USA, LLC, 256 F. Supp. 2d 1168, 1176 (D. Nev. 2003) aff'd sub nom. Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912 (9th Cir. 2005) citing Gen. Motors Corp. v. Dohmann, 247 Conn. 274, 291, 722 A.2d 1205, 1214 (1998)(emphasis added).
[25] See Ex. C, 20:4-13. See also Ex. F, 42:13-16.
[26] See Ex. F, 41:14-42:4.
[27] See Ex. Q, "AmendedComp0038-39," Plaintiff's Handwritten List of Thirty (30) Alleged Defects,

12

1    Further, Plaintiff's allegation that Defendants have allegedly refused or delayed to

2    repair the alleged defects is a direct result of Plaintiff repeatedly refusing Winnebago's

3    repeated overtures to repair any warranty-covered defects.    This behavior objectively

4    contradicts the Plaintiff's assertions that the RV is substantially impaired.

5        **B.    Summary Judgment Should Be Granted Against Plaintiff's Claim for**
        **Breach of Contract Because the RV is a 2014 Model Year as Designated**
6        **by the Final Stage Manufacturer**

7        In opposition to the Defendants' motion for summary judgment as to breach of

8    contract, the Plaintiff raises four arguments, most of which are duplicative of the Plaintiff's

9    other assertions.

10       First, the Plaintiff asserts that the vehicle sold to Mr. Boliba was riddled with defects

11   in breach of the contract between the parties.  The report of both Mr. Hutchcraft and even Mr.

12   Guetzler illustrate that the RV is not "riddled with defects" as discussed above.

13       Second, Mr. Boliba believes that he never had an opportunity to view the 2013 and

14   2014 brochures for the Winnebago Itasca Ellipse and this led him to choose the a different RV

15   than he otherwise might have.  The Plaintiff also argues that a reasonable jury could find that

16   Defendants Camping World and/or Wheeler Las Vegas RV actually sold him a 2013 model

17   instead of a 2014 model.

18       This is bald speculation and irrelevant in any event.  The Plaintiff obtained the RV that

19   he wanted at the time of purchase.  The subject RV was inspected multiple times and test

20   driven by Mr. Wheatley, his partner. There is no evidence aside from the Plaintiff's own self-

21   serving testimony that the brochures were in any way relevant to discussions engaged in at

22   the time of purchase.  The Plaintiff desired a 2014 model Winnebago, and he received a 2014

     Winnebago.

23       To reiterate, motor homes are multistage vehicles, and unlike cars, are generally built

24   in two separate stages by two different manufacturers.    The final stage motor home

25   manufacturer (i.e., the manufacturer of the body of the motor home) has authority to designate

26

27

28

1   the model year of the completed motor home.[28]  The Plaintiff himself testified at his deposition

2   that he is aware that motor homes can built in separate stages in different years.[29]

3       Here, the manufacturer of the chassis of the completed RV, Freightliner Custom

4   Chassis, did not identify the chassis by specific year on the Certificate of Origin because the

5   RV was an incomplete vehicle under 49 CFR § 565.13(a)[30].  The manufacturer of the body of

6   the motor home, Winnebago, under its authority as the final stage motor home manufacturer,

7   identified the RV as a 2014 model year.[31]  Therefore, the RV is a 2014 model year.

8       Additionally, §2.150 of the California DMV Internal Registration Manual clearly

9   states that the final stage motor home manufacturer assigns the model year to the motor home,

10  even in instances when the chassis has a VIN indicating a different year than the serial number

11  of the body of the motor home.  Furthermore, the American Association of Motor Vehicle

12  Administrators ("AAMVA")—of which the Director of the California Dept. of Motor

13  Vehicles is an officer—has published its official policy position that "the model year of a new

14  complete vehicle shall be the only year recorded in the motor vehicle agency files and on the

15  registration and title."[32]

16      Moreover, Kitty Kramer, the California DMV person most knowledgeable regarding

17  registration of motor homes,[33] testified that based upon her review of the documents for the

18  subject RV (including the RV's certificate of origin), the RV should have been registered as

19  a 2014 model year because that is the model year assigned by the final-stage motor home

20  manufacturer.

21      Please recall that Richard Wheatley admitted during his deposition that when he and

22  the Plaintiff took the RV to the California DMV to have it registered, the DMV employee

23  actually gave them the option of having the RV registered as either a 2013 or 2014 model

24

25

---

26  [28] *See* Ex S, <u>Federal Trade Commission Informal Staff Opinion</u>, dated March 5, 2001.
27  [29] *See* Ex. F, 25:9-26:10.
    [30] *See* Ex. Q, "AmendedComp0025," Chassis Certificate of Origin.
    [31] *See* Ex. Q, "AmendedComp0023," Winnebago Certificate of Origin.
28  [32] *See* Ex. U, Policy Positions of the AAMVA, "Multi-Stage Vehicle Titling" at ¶ 6.
    [33] *See* Ex. D, 8:14-9:2.

year. [34]  Thus, it was Plaintiff's own choice to have it registered as a 2013 model year at the DMV office.

Lastly, the Plaintiff argues that a jury could find that these Defendants knew or should have known, based on Dr. Guentzler's testimony that the subject vehicle was defective in breach of the agreement.  Again, Dr. Guentzler admitted the vast majority of the alleged defects in the photographs that he took of the RV were "cosmetic" rather than functional.[35] Whereas the Plaintiff had owned and used the RV for 15 months prior to Dr. Guentzler's inspection, Dr. Guentzler is hardly in any position to opine as to the condition of the RV when it left the factory.

### C.   Summary Judgment Should Be Granted Against the Plaintiff's Claim of Deceptive Trade Practices

The Plaintiff asserts that the Defendants knowingly made false representations as to the model year of the subject vehicle and/or the condition of the vehicle at the time of purchase.  For the reasons discussed above, there was no false representation regarding the model year of the RV.  The RV was presented to be a 2014 model, and it is in fact a 2014 model.  This fact is established by Enoch Hutchcraft, applicable statutes and the impartial testimony of the California Department of Motor Vehicle's Person Most Knowledgeable. Further, the Plaintiff cannot establish that the RV is substantially impaired for the reasons discussed above.

The Plaintiff next asserts that the Defendants knew or should have known that the subject vehicle was in a collision causing the damage and knew or should have known of the faulty repairs to the windshield.  There is no evidence that the RV was in a collision prior to its purchase by the Plaintiff.  It is entirely possible that something may have happened after the Plaintiff took possession; he did after all have undisclosed repairs performed at another RV service provider, Apache RV.  Dr. Guentzler's assertion that Defendants must be responsible for the state of the windshield at the time he inspected the RV is entirely without foundation.

---

[34] See Ex. C, 55:11-56:11.
[35] See Ex. I, 206:6-215:12.)

1      Lastly, the Plaintiff argues that the Defendants violated the Magnuson-Moss Warranty

2  Act and that this violation, by extension, constitutes a deceptive trade practice.

3      The Defendants did not violate the Magnuson Moss-Warranty Act, for the reasons

4  discussed below.

    **D.**    **Summary Judgment Should Be Granted Against Plaintiff's Claims**
5               **Arising Under the Magnuson-Moss Warranty Act Because All Alleged**
             **Defects are the Result of Plaintiff's Failure to Submit the RV for**
6               **Warranty Repairs**

7      The Plaintiff makes the conclusory argument that Winnebago, and only Winnebago,

8  violated its express warranty when Camping World failed to perform repairs.  The Plaintiff

9  again fails to provide any evidence that the alleged defects fall under Winnebago's limited

10  warranty.

11      In any event, as discussed above, Plaintiff has refused to submit the RV for warranty

12  repairs, and the RV is no longer under warranty. Therefore, it is impossible for Defendants to

13  remedy the alleged defects considering that Plaintiff refuses to submit the RV for any

14  warranty-covered repairs and no longer have an obligation to do so even if any previously

15  covered defects do exist.  Under such circumstances, the Plaintiff can hardly claim that repairs

16  were denied.

17      However, repairs were performed prior to the Plaintiffs picking up the RV to address 30

18  issues raised by the Plaintiffs.[36]  The Plaintiff's opposition makes no effort to identify which parts

19  were on order, how those part orders correlate with either the Plaintiff's or Dr. Guentzler's list of

20  issues and why their purported exchanges with Camping World Las Vegas and Vacaville

21  prevented them from presenting their RV, even once, for repairs since they picked it up in

22  December of 2013.

23      What is undisputed is that the Plaintiffs took delivery of the RV at the time of purchase

24  and never returned with it to have warranty work performed.[37]

25

26  [36] *See* Ex. Y, 23:9-18.  The Plaintiffs never identify which specific issues were not addressed prior to their purchase.
27  [37] The Plaintiffs had work performed on the RV by Apache RV that was never disclosed. *See* Ex. Y, 33:13-17; 41:2-6.  Aside from the deposition testimony of Mr. Wheatley, we have no way of knowing precisely what work was performed at this time.

28

**E.**   **Summary Judgment Should Be Granted Against Plaintiff's Claim Arising Under NRS § 104.1203 Because All Alleged Defects are the Result of Plaintiff's Failure to Provide Reasonable and Necessary Maintenance**

The Plaintiff's argues that Defendant Wheeler Las Vegas RV breached its covenant of good faith and fair dealing by failing to disclose the defective nature of the RV, failing to disclose that the RV was in a prior accident (an assertion by Dr. Guentzler that is otherwise unsupported by the record).  The Plaintiff further argues that Wheeler is liable for breaching implied covenants when is sales-representative, Mr. Duston failed to download brochures from Winnebago's website because "that would have endangered the sale."

The lack of any evidence indicating that the RV was involved in an accident prior to its purchase has by the Plaintiff been discussed repeatedly throughout this reply.  The odometer reading—which Plaintiff filled in himself—was 1,839 miles at the time of purchase, which approximately equates to the driving distance from the Winnebago manufacturing facility to Camping World Las Vegas.  Dr. Guentzler has no way of knowing what may have happened to the RV in the 15 months it was in the Plaintiffs' hands before he inspected it.  As discussed above, the Plaintiffs failed to disclose work performed by Apache RV prior to the deposition of Richard Wheatley.  Its entirely possible that the window issue spoken of by Dr. Guentzler, if it exists, arose during the Plaintiff's tenure of ownership.  The Plaintiff certainly cannot present evidence indicating that any such condition is due to its state of manufacture.

As to the model, Defendants have offered up conclusive deposition testimony and statutory authority that establishes that the RV is a 2014 model as discussed above.

**F.**   **Summary Judgment Should Be Granted Against Plaintiff's Claim For Fraud Because Plaintiff Failed To Provide Evidence of Fraud And The RV Is A 2014 Model Year, And Was New At The Time Of Purchase**

The Plaintiff's opposition bases his claim for fraud in part upon the premise that the RV is a 2013 model year and not a 2014 model year.  Of course, for reasons already discussed, the RV is in fact a 2014 model year.  This simple fact rendered irrelevant the Plaintiff's secondary assertion: that the sale Representative, Robert Duston, failed to provide a sales brochure at the time of purchase.

The Plaintiff also persists in his assertion that the RV was involved in an accident, prior to the Plaintiff's purchase of which there is no evidence.

1    The Plaintiff's opposition fails to provide evidence of fraud by any of the Defendants

2  and this claim should be dismissed.

3  **IV.**    **CONCLUSION**

4    Pursuant to Fed. R. Civ. P. 56(a), and for the reasons stated herein, Defendants

5  respectfully request this Honorable Court grant summary judgment in favor of all Defendants

6  and against all of Plaintiff's claims, and dismiss this action with prejudice.  The Defendants

7  pray for all other just relief.

8    DATED this _20_ day of January, 2016.

9                                    **WOLFENZON ROLLE EDWARDS**

10

11                                   MICHAEL M. EDWARDS, ESQ.
                                     Nevada Bar No. 6281
12                                   NICHOLAS L. HAMILTON
                                     Nevada Bar No. 10893
13                                   6725 Via Austi Parkway, Suite 260
                                     Las Vegas, Nevada 89119
14                                   702-836-3138

15                                   *Attorneys for Defendants* Attorneys for
                                     Defendants Camping World, Inc.
16                                   Wheeler RV Las Vegas, LLC, and Winnebago
                                     Industries, Inc.

17

18

19

20

21

22

23

24

25

26

27

28
                                       18

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Wolfenzon Rolle Edwards and that on this 20 day of January, 2016, I did cause a true copy of **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** to be electronically transmitted to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Randal R. Leonard, Esq.
Law Office of Randal R. Leonard, Esq.
500 S. Eighth Street
Las Vegas, NV 89101

rleonard999@yahoo.com

*Attorney for Plaintiff*



An employee of WOLFENZON ROLLE EDWARDS

# EXHIBIT Y

Richard Wheatley
June 2, 2015

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KIM BOLIBA,                                    )
                                               )
                Plaintiff,                     )
                                               )
        vs.                                    )    Case No.:
                                               )    2:14-cv-01840-JAD-NJK
                                               )
CAMPING WORLD, INC.; CAMPING WORLD )
RV SALES, LLC; WHEELER LAS VEGAS )
RV d/b/a CAMPING WORLD RV SALES, )
WINNEBAGO INDUSTRIES, INC., )
DOES 1-10; and, ROE Corporations )
1-10, )
                                               )
                Defendants.                    )
_____)

CERTIFIED
COPY

DEPOSITION OF RICHARD WHEATLEY

Taken at the Law Offices of
Wilson, Elser, Moskowitz, Edelman & Dicker
300 South Fourth Street
11th Floor
Las Vegas, Nevada 89101

On Tuesday, June 2, 2015
At 1:03 p.m.

Reported by:  Sarah M. Winn-Boddie, CCR No. 868

U.S. LEGAL SUPPORT
(714) 486-0737

**Richard Wheatley**
**June 2, 2015**

```
 1    APPEARANCES:

 2       For the Plaintiff:              RANDAL R. LEONARD, ESQ.
                                         Randal R. Leonard, Ltd.
 3                                       500 South Eighth Street
                                         Las Vegas, Nevada 89101
 4                                       (702) 598-3667
                                         rleonard999@yahoo.com
 5

       For Defendants Camping World, Inc., Wheeler RV Las Vegas,
 6     LLC, and Winnebago Industries, Inc.:

 7                                       WILSON ELSER
                                         TYSON HAFEN, ESQ.
 8                                       300 South Fourth Street
                                         11th Floor
 9                                       Las Vegas, Nevada 89101

10                                       (702) 727-1400

11

12                          *****

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Richard Wheatley**
**June 2, 2015**

1                        I N D E X

2    WITNESS                                    PAGE

3     RICHARD WHEATLEY

4    Examination by Mr. Hafen                      5
     Examination by Mr. Leonard                   79
5    Further Examination by Mr. Hafen             87

6

7

8

9    EXHIBITS                                  MARKED

10    A        Photograph                         11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Richard Wheatley**
**June 2, 2015**

1      A.   Let's see.  On the interior, there was a few light

2  covers that were missing.  There was light bulbs that were

3  burned out.  There was a trim piece that was -- come loose by

4  the dishwasher, I think a towel bar that was not secured

5  properly.

6          Outside, I remember pointing out that there was a

7  couple scratches on the window frame and a few other things,

8  but then again, it's all in the list that we've given you.

9      Q.   Did Camping World resolve those issues you just

10  pointed out prior --

11      A.   Some of them.

12      Q.   Which ones did they not correct?

13      A.   I honestly don't recall which ones were which and

14  which ones we found after the fact.  I know that they fixed

15  the -- one of the trims around the windows and they put the

16  toilet paper holder in and, you know, the light covers.  But

17  other than that, I can't recall which ones were before and

18  after.

19      Q.   Did you sign any of the documents with any of the

20  defendants?

21      A.   No.

22      Q.   Did you deal at all with the financing?

23      A.   No.

24      Q.   Did you meet with Mr. Gottlieb?

25      A.   I was present.

23

Richard Wheatley
June 2, 2015

1    blinds that are not working, the shades that are not -- that

2    one actually has fallen off numerous times and we've -- I've

3    put it back up there and finally have just given up and we

4    just don't use it anymore.  It stays down.

5        Q.    Did you open or close any of the blinds during the

6    walk-through or two other inspections prior to purchase?

7        A.    Not that I recall.

8        Q.    Next, "The blinds on entry door broke off

9    completely."

10       A.    Those, we had to actually have replaced because the

11   whole thing broke completely.

12       Q.    Who replaced them?

13       A.    I don't -- it's an RV repair that's near where we

14   have the RV stored.  I don't recall the name.  I can -- I

15   think it's Apache RV that did the work.  It was something

16   around $700.

17       Q.    Who paid?

18       A.    We did.

19       Q.    Have you been reimbursed at all --

20       A.    No.

21       Q.    -- for that payment?

22             Do you know whether or not that was covered under

23   warranty?

24       A.    I have no idea.  I would hope so.

25       Q.    "The television in the bedroom infrared doesn't work

                                                               33

Richard Wheatley
June 2, 2015

1        What does that mean?

2    A.    There was a plumbing leak in the sewage hookup

3 compartment where the water and all the hookups are which has

4 since been fixed.

5    Q.    Who fixed it?

6    A.    I think it was Apache RV.

7    Q.    When did they fix it?

8    A.    Don't recall.

9    Q.    Do you know why Mr. Boliba failed to disclose that

10 Apache RV did any repairs on the RV?

11    A.    He probably forgot.  Again, I was the one more

12 mechanical with it so I probably made the arrangements and it

13 might have just been fixed and he may not have even be aware

14 of it.

15    Q.    When you passed along -- when you and Mr. Boliba

16 passed along this information to your attorney, has it mainly

17 been you communicating with Mr. Leonard or Mr. Boliba?

18    A.    Both of us.

19    Q.    Okay.  "It appears that significant body work was

20 done underneath the vehicle."

21    A.    Mm-hmm.

22    Q.    Why do you say that?  What evidence do you have

23 that --

24    A.    Just overpainting, overspray, the use of insulating

25 foam, new pieces that it appears to have been, you know,

41

Richard Wheatley
June 2, 2015

1    or since we sought the advice of an attorney, not to go there.

2        Q.   Has anyone at Camping World or Winnebago told you

3    that your RV is no longer under warranty?

4        A.   Not that I know of.

5        Q.   So after you purchased the RV, the only times you

6    presented the RV to any dealership for repair work were at

7    Findlay, and did you ever take it back to Camping World?

8        A.   Well, they had it initially to do the repairs that

9    we had on the walk-through, to start the repairs and order the

10   parts that they needed, which we tried to get sent to the one

11   in Vacaville, and then we tried it at Findlay --

12       Q.   But Vacaville, you didn't take the RV with you,

13   right?

14       A.   No, because it took forever.  They couldn't --

15   Camping World here couldn't seem to get parts shipped

16   correctly to Vacaville or in one piece.  That took months just

17   to get it, you know, coordinated with Vacaville.  And in that

18   time, we came back down from -- went to Yuma and back to here

19   so we never made it in to Vacaville.

20       Q.   Okay.

21       A.   Or the parts never got there before we left and

22   ended up back here.

23       Q.   Did you return to Las Vegas on several occasions to

24   have -- strike that.

25            Has Camping World ever refused to perform repairs?

                                                              77

EXHIBIT Z

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CERTIFIED
COPY

KIM BOLIBA,                          )
                                     )
            Plaintiff,               )
                                     )
       vs.                           )   Case No.:
                                     )   2:14-cv-01840-JAD-NJK
                                     )
CAMPING WORLD, INC.; CAMPING WORLD   )
RV SALES, LLC; WHEELER LAS VEGAS     )
RV d/b/a CAMPING WORLD RV SALES,     )
WINNEBAGO INDUSTRIES, INC.,          )
DOES 1-10; and, ROE Corporations     )
1-10,                                )
                                     )
            Defendants.              )
_____)

DEPOSITION OF KIM BOLIBA

Taken at the Law Offices of
Wilson, Elser, Moskowitz, Edelman & Dicker
300 South Fourth Street
11th Floor
Las Vegas, Nevada 89101

On Tuesday, June 2, 2015
At 10:01 a.m.

Reported by:  Sarah M. Winn-Boddie, CCR No. 868

**Kim Boliba**
**June 2, 2015**

```
 1   APPEARANCES:

 2     For the Plaintiff:          RANDAL R. LEONARD, ESQ.
                                    Randal R. Leonard, Ltd.
 3                                  500 South Eighth Street
                                    Las Vegas, Nevada 89101
 4                                  (702) 598-3667
                                    rleonard999@yahoo.com
 5

       For Defendants Camping World, Inc., Wheeler RV Las Vegas,
 6     LLC, and Winnebago Industries, Inc.:

 7                                  WILSON ELSER
                                    TYSON HAFEN, ESQ.
 8                                  300 South Fourth Street
                                    11th Floor
 9                                  Las Vegas, Nevada 89101

10                                  (702) 727-1400

11

12     Also Present:               Richard Wheatley

13                          *****

14

15

16

17

18

19

20

21

22

23

24

25
```

**Kim Boliba**
**June 2, 2015**

```
 1                        I N D E X

 2    WITNESS                                    PAGE

 3      KIM BOLIBA

 4    Examination by Mr. Hafen                      5
      Examination by Mr. Leonard                   96
 5

 6

 7

 8

 9    EXHIBITS                                  MARKED

10      A         Register of Actions              16

11      B         Document Entitled "Answers From
                  RVIA: Split Model Years"         25
12
        C         Certificates of Origin for a Vehicle  28
13
        D         National Highway Traffic Safety
14                Administration, DOT Printout     33

15      E         Document Entitled "New Vehicles Sold
                  by California Dealers, Vehicle
16                Industry Registration Procedures"  36

17      F         Photocopy of Business Card       40

18      G         Buyer's Order                    67

19

20

21

22

23

24

25
```

**U.S. LEGAL SUPPORT**
**(714) 486-0737**

**Kim Boliba**
**June 2, 2015**

```
1        A.    Once or twice.

2        Q.    You said they gave it to you for two or three days

3   to get familiar with it?

4        A.    No.  No.  No.  After you buy it, it is advised that

5   you stick around two or three days because you have to learn

6   about it so you can go back to the dealership and ask

7   questions because you can't possibly absorb everything there

8   is to learn right there when they give you the final sales

9   talk after you purchase it.

10        Q.    Sorry.  How many times did you say Richard test

11   drove it?

12        A.    Once or twice.

13        Q.    For how long each time?

14        A.    I don't remember.  It's not like we went very far,

15   just a few miles down the road.  They don't let you like take

16   it out of state or anything.

17        Q.    Is it fair to say that Mr. Wheatley wanted the RV

18   more than you did?

19        A.    No.

20        Q.    How long did you and Mr. Wheatley inspect the RV

21   prior to purchase?

22        A.    We went twice, with the salesman both times.

23        Q.    On different days?

24        A.    Yes.

25        Q.    And for how many hours did you inspect it?
```

48

**Kim Boliba**
**June 2, 2015**

1   the finance guy.  And also, I don't know her name but the

2   finance guy at Camping World called his manager, which was a

3   lady for the whole western US territory for Camping World.

4   She talked to me personally and she said it has nothing to do

5   with you or your credit, sometimes they get overloaded with

6   loans, they have a number of loans per month that they want

7   to -- they don't want to be -- that they approve, that they

8   don't want to be overloaded with loans, so sometimes, you

9   know, they reach their -- their saturation point and you've

10  got to wait, but I will talk to them and your loan is an

11  excellent loan.  There's no reason why this loan shouldn't be

12  approved.  There's not a flaw in it.  We'll get this loan

13  approved.  She intervened and somehow the loan got approved.

14       Q.   Ultimately, you purchased the RV on approximately

15  December 10th, 2013, correct?

16       A.   The sales contract says 12/10/2'13.

17       Q.   So yes?

18       A.   Yes.

19       Q.   And you got the RV that you inspected, correct?

20       A.   Correct.

21       Q.   You got the RV that you chose yourself, correct?

22       A.   Correct.

23       Q.   You got the RV that you and Mr. Wheatley test drove,

24  correct, or that he test drove, correct?

25       A.   Yeah, for about five miles.

65

Kim Boliba
June 2, 2015

1    me.

2          MR. HAFEN:  What exhibit are we on?

3          THE COURT REPORTER:  G.

4          MR. HAFEN:  Okay.  Exhibit G.

5          (Exhibit G marked for identification.)

6    BY MR. HAFEN:

7      Q.   What does this document look like?

8      A.   Sales -- sales --

9      Q.   Like your sales agreement, sales contract?

10     A.   Correct.

11     Q.   On page 5 of your complaint, which you don't have in

12   front of you, paragraph 32 reads, "At the time of purchase of

13   the subject RV, Plaintiff was provided with written warranty

14   materials that are hereby incorporated by reference as though

15   fully set forth herein."

16          Where is that written warranty?  Do you still have a

17   copy of it?

18     A.   I probably do in my file at home.

19     Q.   Okay.  But you haven't produced it yet in this case,

20   have you?

21     A.   I don't remember at this time.

22     Q.   If it exists.

23          MR. LEONARD:  I believe we did, a Good Sam warranty.

24          MR. HAFEN:  Okay.

25          THE WITNESS:  That's -- yeah.  That was an extended

                                                              67

**U.S. LEGAL SUPPORT**
**(714) 486-0737**

Kim Boliba
June 2, 2015

1    Q.   Okay.

2    A.   We've gone over this twice already.

3    Q.   Okay.  So you're contending that it's no longer

4    under warranty?

5    A.   I contend the warranty work should still be done

6    because we got the list of warranty items to them for warranty

7    work to be done before the warranty date was up, and that's

8    what they told us at the Winnebago dealer that mattered.

9    Q.   Okay.

10   A.   Whether it's true or not, I don't know, but that's

11   what they informed us.

12   Q.   What's your end goal in filing this lawsuit?

13   A.   Just to get what I think is rightfully mine that I

14   paid for, what is fair and honest.

15   Q.   Do you plan on keeping the RV if the alleged

16   warranty-covered defects are repaired and corrected?

17   A.   No, I don't, because it's not the correct year.

18   Q.   So your goal is to get rid of the RV?

19   A.   The goal is for them to honestly give me a 2'14 as

20   promised, as sold to me, not a 2'13 trying to disguise as a

21   2'14 and trying to litigate it as a 2'14.  I think that's very

22   dishonest of them.

23   Q.   What amount are you claiming in damages?

24   A.   That's still to be determined.  I mean, they tried

25   to dismiss it.  They applied to the Court three time -- three

94

EXHIBIT AA

## Enoch Hutchcraft
4257 Barger Drive #204
Eugene, Oregon 97402
*541 915 8441*

**Work history/ CV**
**Technical expertise**

RVForensics@cvcable.net

July 31, 2015

**RVForensics  LLC**   *March 2012 - Present*
Member-Consulting and Expert Witness services for RV related matters

"Lemon Law" and warranty issue expert consultation, investigation, inspection, reports and testimony for litigation, pre-litigation, NHTSA recall, service contract matters related to all forms of Recreational Vehicles. Gas puller chassis, Diesel pusher chassis, entry level to luxury level Motorhomes, Bus conversions, Travel trailers, 5th Wheel trailers,  Retail and wholesale value expert.  Expert regarding all service and warranty issues, manufacturing and sales issues.  Interior, exterior, paint, fiberglass, lamination, powertrain, chassis, axles, alignment, drivability complaints, cabinetry, mold, water intrusion.  Expert consulting regarding fire and collision loss issues beyond cause & origin and crash investigation.  Legal expert support for all areas of RV use, service, sales, construction or loss.

**Monaco RV LLC**   *June 2009 – March 2012*
Director of Powertrain Development

Responsible for integration of all Navistar Inc. MaxxForce Diesel brand engines into Monaco RV, LLC. products. From MxF 7 to MxF 15 all horse power ratings all products. MxF 10 EPA 2007 all models MxF EPA 2010. "Hands on" and senior management level responsibility for delivering completed RV powertrain product. Individually Designed commercial cooling system for engine packages, i.e. radiator, charge-air-cooler hydraulics, ancillary drives etc.  Commercial systems were adapted to military application and subjected to Mil Spec testing.  System is now in military use.

FMVSS & CMVSS, (code compliance) responsibility for entire vehicle chassis and "house".

Legislative interface for RV industry.  RVIA, IALLA, as well as Monaco-specific legislative efforts.  Testimony at legislative hearings, state and federal level.  Former Member of Public and Legislative Affairs Committee, former Chairman Lemon-Law sub-committee RVIA.  Member International Association of Lemon Law Administrators.

**Monaco Coach Corporation**  *August  1986 - June 2009*
Vice President

Executive level person responsible for managing legal defense.  In addition to my "Hands on" expert analysis and testimony experience, I supervised the team that had operational responsibility for supplying expert witness testimony, product documentation and technical expertise to lawyers and/or direct interface with extra-judicial state entities.  Direct responsibility to take cases from filing to resolution, whether mediated

settlement or trial verdict (500+ cases).  Provided expert technical and organizational testimony for all phases of RV design, chassis design and construction, sales, service, warranty.  Provided fire cause & origin support and expertise.  Provided vehicle crash investigation support and expertise.

Executive and hands on operational and design responsibility for RoadMaster Chassis Division of Monaco Inc. Engine/powertrain integration for Cummins, Caterpillar and Detroit Diesel engines, GM and Ford gasoline engines.  GM, Ford, EATON and Allison transmissions, Rockwell, Westport and EATON etc drive and steer axles.  Steering and suspension systems including direct design of outboard mounted air-bag chassis suspension system.

Responsible for departmental and corporate budgets ranging from a few hundred, to many millions dollars. Initial assignment was to create factory service center, warranty, parts departments and processes.  Address dealer and consumer requirements when interfacing with factory.  Executive level supervision with hands-on participation for engineering, code compliance and QC department functions (ANSI, SAE, FMVSS, ANSI 119.2, NFPA 501C, NHTSA / TREAD act code and compliance).  Responsible for training director, manager and supervisor level personnel for these departments as the company grew in size.  Initially personally trained RV service technicians and compliance personnel at factory and dealership, developed factory service school, contributed to RVIA service school creation/curriculum.

RV Show sales support and day to day wholesale sales.  Sold Monaco RV products directly to consumers and dealers.  Direct support of dealer interface with Monaco for all issues.  Participated in more than 200 shows.

Road test driver at shows.  Designed course, gave direct instruction to many hundreds of RV drivers.

Authored magazine articles for Monaco Coach Club publications.  Initially one club magazine then four separate magazines.  This writing assignment lasted for more than 20 years.  Authored more than 300 articles.

VP Operations/Production for initial Indiana plant start-up.  Prior to acquisition of Holiday Rambler by Monaco Coach Corp, I created and established production plant operations in Indiana that in time equaled Oregon production facility.

Executive supervision and operational responsibility for motorhome and trailer construction.  Designed and implemented processes and methods for production, all phases of motorhome and trailer divisions.

Executive, operational and design responsibility for the RoadMaster Chassis Division that supplied McCoy Miller Ambulance Division of larger parent company (Warrick Industries).  Individually designed custom ambulance chassis to meet GSO KKK-A-1822 standard.  Proto ambulance unit completed 50,000 mile accelerated durability testing at Bendix Proving Grounds without chassis failure.

Designed and helped sales bring to market on-highway bus for Goshen Coach Division of larger parent company (Warrick Industries).  Supervised team that had operational responsibility for supplying entire shell as well as the chassis for this product.  Designed and helped sales bring to market Goshen Coach Division unique low floor Airport Rental Car Shuttle.  Supervised team that had operational responsibility for supplying entire shell as well as the chassis for this product.

Volunteered and provided "deep research" guidance and technical expertise to consumer organization FMCA. Review independent articles for technical correctness as support for FMC magazine editorial leadership and staff.

Legislative interface person.  RVIA (Recreational Vehicle Industry Association) and Monaco Coach Corp specific legislative efforts.  Member of RVIA Public and Legislative Affairs Committee, Chairman of Lemon-Law subcommittee until June 2012.  Testimony at legislative hearings, one on one input, at state and federal level, as well as direct input to state governors of Oregon and California.

Member of IALLA (International Association of Lemon Law Administrators).  Organization is in large part a coalition of states assistant Attorney's Generals and state Consumer Protection Division personnel.

**Abbreviated pre-Monaco work history:**

*Pre- 1986*
**Executive Industries Inc.**  Hired as Sr. Manager for factory service center, warranty and parts operations. Promoted to Director, VP. Engineering oversight and responsibility for entire vehicle at VP level. ('81-'86)
**Reliable RV/Denny's Automotive**  Co-owner, shared space, auto repair and RV repair business
**Airstream-** Trailer repair technician all systems and body.
**MobileCraft/All-American Texaco/Alternative Fuels** -Owner of mobile RV service company/Texaco gas station and company for propane fuel conversion in automotive/truck engines.
**Corona RV Sales** – Used coach refurbish mechanic and weekend sales person
**Leisure Living RV** – Ops director, parts and service.  Part time retail sales at working level.  Part time sales manager.
**Mike Thompsons RV** – Used coach refurbish mechanic all systems.  Brake and front end mechanic.  Service writer.
**Bill Barry Pontiac GMC Truck & RV** – Brake and front end mechanic for cars, trucks and motorhomes.
**Phils Auto Repair & Machine Shop** - Mechanic/machinist for cars and trucks
**Fred's Shell Service** – Mechanic cars and trucks
**Security Tire Stores Inc.** - Tire buster, became licensed brake mechanic.
**Kelly Springfield Tire Co.** - Unloaded tires from rail cars.  Also worked with tire failure analysis group
**US ARMY-**  Electronic equipment repairman.  Honorable discharge, Viet Nam era vet ('70-'71)
**Hawaiian Gardens TV repair** – TV repairman

<u>**Service Schools and RV specific Training**</u>

**RVIA Service Technician school curriculum**

| | | | |
|---|---|---|---|
| Intro to RV Service | Pre-Delivery Inspection | Preventative Maintenance | Electrical Systems |
| Propane Systems | Plumbing Systems | Air Conditioners | Refrigerators |
| Water Heaters | Ranges & Cooktops | Heating Appliances | Generators |
| Hydraulics | Brakes, Suspension & Towing | | |

**Spartan Motors USA**
Spartan Chassis/Entegra RV Training

| | | | |
|---|---|---|---|
| Chassis general maintenance | Chassis Air Systems | Chassis Electrical | Cummins Engines |
| Chassis Troubleshooting | Brakes & Tires | | |

**Spartan Motors USA continued**
Entegra Specific
Inverters/Electrical          Jack system/equalizer          Slides/control Panel     Auto gen-start

**Spartan Motors USA**
Chassis specific ESC/SCV (Fire Truck/Motorhome) training
Spartan Warranty         Wabco Air System         Wabco ABS Brakes         Chassis Maintenance (DOT)
Cummins Engines          Chassis Elect VMUX       Data Link diagnostic      Air Conditioning
Chassis Brakes           Chassis Electrical       Drive line                Reyco-Granning Suspensions
Advanced Protection System (Air-Bags) w/cert …40915RAPS

**Monaco Inc**
Developed curriculum and taught RV specific training

**Education:**
*Navistar "University"*

   Navistar Defense:

        International Trafficking of Arms Regulations (ITAR) Certified
        Navistar Defense Code of Conduct
        Government contracts
        Careful Communication

   Navistar Commercial

        Information security
        Business ethics
        Record Retention
**Education continued:**
   Navistar Commercial

        Navistar Code of Conduct
        Contracts
        Gifts and Gratuities

**Chaffee College**- Machine tool & plastics technology

**Golden West College** – Business math, sociology, psychology, English

**GM technical schools**- Brake systems, power steering systems, powertrain systems

**US Army** –Multiple technical training schools in electronics

**Kennedy High School** – Graduated 1969 academic award, Industrial Arts, electronics, athletic letter in track and field

**RV Specific Work Related Organizations**

**RVIA** -- Recreational Vehicle Industry Association
        o   Public & Legislative Affairs Committee   (past member)
        o   Lemon Law sub-committee P&LA  (past chairman)
**IALLA** -- International Association of Lemon Law Administrators.

- o Long standing member of this association of states assistant attorneys generals that have responsibility for their states respective lemon laws.

**CHP-MSC**-- California Highway Patrol-Motorhome Safety Committee.
- o Led independent RV industry effort to legalize 40'+ motorhomes in California.   Motorhome Safety Committee was outgrowth of that successful effort in the form of AB-67, signed into law by then governor Gray Davis.
- o Acted, drove, script contribution for RV Safety Video required in 40'+ coaches in California

**FMCA**- Family Motor Coach Association—Motorhome Club
- o Resource for consumers and manufacturers regarding all RV issues

## General work Related Organizations

**SAE**--  Society of Automotive Engineers.

**NFPA**—National Fire Prevention Association

## Licenses held current/prior:

**CDL** - Commercial Driver's License w/air-brake
**Airplane Operators License**
**Brake Mechanic**
**Propane Mechanic**

## Organizations current/prior:

**AOPA**- Aircraft Owners and Pilots Association- Private Pilot
**NRA**- National Rifle Association
**PADI**- Professional Association of Dive Instructors
**GreenPeace International**
**Citizens For A Safer Lane County** Legislative Advocate
**OSSA**--Oregon State Sheriff's Association-citizen volunteer
**LCPOA**—Lane County Peace Officers Association-Legislative Advocate

## Current and prior legislative advocacy affiliations:

| | | | |
|---|---|---|---|
| Prevost Car Inc . | Country Coach Inc. | Blue Bird Bus  Inc. | Featherlite Inc. |
| Newell Coach  Inc. | Monaco Coach Corp | LCPOA | CFASLC |

## Publication History

*Approximately 300 magazine articles ranging from technical to RV Lifestyle.*  Each of the four (4) Monaco Coach Club Magazines had a magazine.  Sometimes one article would be written by me for each magazine and sometimes the same article would be published in two or more club magazines.  However, the abrupt demise of Monaco Coach Corporation eliminated the opportunity to properly document earlier publication subject matter and/or copies of the articles.

## Presentations & Publications
Emerging Technologies IALLA 2012
RV Lemon Laws in perspective IALLA 2006

**Presentations & Publications continued**
Several more presentations at IALLA, FMCA, Monaco RV Club seminars and moderations.

**Professional & Personal references:**
Several references are available for various areas of my specific expertise.  Gladly provided upon request

**Historical Trial and Deposition testimony**

***Several (approximately 50-75) Depositions, and (approximately 20+) Trial/hearing testimony occurrences***
> Abrupt demise of Monaco Coach Corp eliminated opportunity to properly document earlier
> expert deposition and trial testimony over a very wide variety of subjects related to RV's in previous
> 35+ years of my litigation history

**Trial and Deposition testimony last four years:**

***Meyer v. Tiffin***   11-CV-288 Federal District Court Western District of Wisconsin
> ***Deposition*** testimony 5-22-2012  Expert testimony regarding use, value, repairs, of Luxury RV

***Culver v. Tiffin***  CIVDS 1015358 California Superior Court San Bernardino Division
> ***Case Description*** Consumer dissatisfied with quality and service of motorhome
> ***Deposition*** 8-08-2012 Expert testimony regarding value, interior and exterior issues
> ***Trial testimony*** 9-25-2012 same

***Hobbs v. Freightliner Tiffin RV et al***  Civil Action 2010-090290 Sup Ct. Maricopa County Arizona
> ***Case Description*** Consumer dissatisfied with quality and service of motorhome and chassis
> ***Binding Arbitration Hearing testimony***  Formal binding arbitration 11-16-12 Chassis weight, design,
> vehicle value

***Haley v. Wichita RV Haley v. Wichita RV*** Case No.  11 CV 1511 18th JUDICIAL DISTRICT SEDGWICK COUNTY, KS
> ***Case Description*** Consumer dissatisfied with quality and service of motorhome
> ***Deposition*** 11-30-2012 Expert Testimony regards coach slide out and various other coach systems.
> manufacturing processes etc

***Schiel v. Navistar et al*** USDC Arizona 2:13-cv-00473-GMS
> ***Case Description*** Consumer dissatisfied with quality and service of motorhome and chassis
> ***Deposition*** 1-14-2014 Expert testimony regarding value, interior, service, exterior chassis issues

***King v. Navistar et al*** USDC Arizona CV-00964-PHX-DGC
> ***Case Description*** Consumer dissatisfied with quality and service of motorhome and chassis
> ***Deposition*** 1-15-2014 Expert testimony regarding value, interior, exterior, chassis issues

***Christian v. CAT Monaco Navistar et al***  California Superior Court 30-2011-00478320
> ***Case Description*** Consumer dissatisfied with quality and service of motorhome and chassis
> ***Deposition*** 2-28-2014 Sworn Percipient witness testimony regarding vehicle chassis
> manufacturing, design, service, post manufacture processes etc

**Trial and Deposition testimony last four years continued:**

***Sura v Monaco RV Allied Recreational Group et al*** CAP RV -  Florida Case # 90131002
       ***Case Description*** Consumer dissatisfied with quality and service of motorhome and chassis
       ***Binding Arbitration Hearing testimony*** 7-09-2014 Sworn hearing testimony regarding vehicle
       chassis manufacturing, design, service, post manufacture processes etc

***State Farm (Subrogee of Knapp) v Northgate Parts et al*** USDC, E. District of TN No. 1:13-cv-99
       ***Case Description*** Property loss due to Motorhome fire
       ***Deposition*** 9-9-14 fire cause and origin opinion